Robert D. Mitchell (SBN 011922)
Christopher J. Waznik (SBN 032812)
Anne P. Barber (SBN 035591)
CM Matthew Luk (SBN 037238)

**TB** T I F F A N Y & B O S C O
P.A.

Camelback Esplanade II, Seventh Floor
2525 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 255-6000
E-mail: rdm@tblaw.com; cjw@tblaw.com;
apb@tblaw.com; cml@tblaw.com
*Attorneys for Claimant Haiqiang Lu*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                              Plaintiff,<br><br>v.<br><br>1,150,049.51316 TetherUS ("USDT")<br>59,939.992 Ethereum Classic ("ETC")<br><br>                              Defendants, | **No.: 4:23-cv-00147-MSA**<br><br>**MOTION TO DISMISS AND RETURN PROPERTY**<br><br>**(Oral Argument Requested)** |

Claimant Haiqiang Lu, by and through undersigned counsel, moves this Court for an order dismissing the United States of America's (the "Government") claims in this action and returning seized property back to Haiqiang.  The Motion is based on Fed. R. Civ. P. 12(b)(5) and (6); Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"); the Fifth Amendment of the United States Constitution; the Court's equitable jurisdiction; 18 U.S.C. §§ 981, 983; the other relevant statutes and administrative rules and regulations; the attached Memorandum of Points and Authorities and Exhibits in support thereof; the Verified Claim of Haiqiang Lu and Contest of Forfeiture (Doc. 17); and

1    upon any other oral and/or documentary evidence which may be adduced at the hearing on

2    this motion.  A Good Faith Consultation Certificate is attached as **Exhibit 1**.

3    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

4    In or around 2019, cryptocurrencies entered the mainstream and became an important

5    asset for investors worldwide.  Investors freely trade these cryptocurrencies on exchanges and

6    the secondary market.  Mr. Haiqiang Lu, an investor based in Hong Kong, purchased millions

7    of dollars' worth of cryptocurrencies using fiat money (Hong Kong Dollars) and stored them

8    on a leading cryptocurrency trading platform known as Binance.  Unfortunately, these highly

9    liquid cryptocurrencies can be instantly exchanged with a click of a button, meaning criminals

10    can easily offload them onto unsuspecting purchasers.

11    In this case, the Government seized Haiqiang's USDT and ETC, despite the lack of

12    any connection between Haiqiang and the alleged criminal activities.  Although not described

13    in the search warrant, Haiqiang lost several other cryptocurrencies, including but not limited

14    to BTC, DOGE, DOT, and others.  Despite the seizure, the Government failed to provide a

15    single notice to Haiqiang, leaving him unable to contest the loss of his rightful property for

16    years.  The Court must expeditiously right this wrong and return the wrongly seized assets to

17    their lawful owner.

18    **I.    <u>Statement of Facts</u>.**

19    On or about October 27, 2022, the Government executed a search warrant and seized

20    certain cryptocurrencies belonging to Haiqiang, including but not limited to 1150049.51316

21    USDT and 59,939.992 ETC.  *See* Complaint ¶ 2 and **Exhibit 2** – 2022-10-27 Warrant to Seize.

22    According to the affidavit of Special Agent Nathan Wood ("Wood"), attached to the

23    Government's complaint, these cryptocurrencies were allegedly connected to a complex

24    investment fraud scam, also known as "Pig Butchering."  *See* Wood's Affidavit ¶ 7.  The

25    Government does not allege Haiqiang participated in this so-called investment fraud scam,

26    only that the cryptocurrencies owned by Haiqiang can somehow be traced to the victims.

27

28       MOTION TO DISMISS AND
RETURN PROPERTY

1    Despite seizing Haiqiang's property valued in the millions, the Government
2    intentionally chose to ignore Haiqiang's emails and not provide notice. *See* Wood's Affidavit
3    ¶¶ 44-47 ("On October 21, 2022, I received an email from HAIQIANG LU… As of the date
4    of this affidavit, I have not responded to either email."). For over two years, Haiqiang
5    believed Binance simply froze his account and tried to determine how he could re-obtain
6    access. *See* Doc. 17: Verified Claim of Haiqiang Lu ¶¶ 10-16.

7    After months of attempting to contact Mr. Wood, Haiqiang engaged an attorney in
8    Hong Kong. *Id.* ¶ 13. On December 14, 2024, the Hong Kong attorney sent a formal letter
9    to Wood on Haiqiang's behalf, asking whether the Government seized the cryptocurrencies
10   or whether Haiqiang's Binance account remained frozen for investigation purposes. *Id.* ¶ 14.
11   After several follow-up attempts, Wood responded in an email dated March 20, 2025, stating
12   that the "assets are subject to seizure and forfeiture. Once the forfeiture process begins, we
13   will send out a notice and your client will be appropriately notified for their opportunity to
14   contest the seizure." *Id.* ¶ 15 and Exhibit B. Thus, after more than two years of trying to
15   figure out why Binance froze his assets, the Government finally notified Haiqiang that his
16   assets were subject to seizure and forfeiture. Still, the Government failed to inform Haiqiang
17   that the seizure had *already* occurred and a complaint for forfeiture had been filed. Haiqiang's
18   Hong Kong attorney made subsequent attempts to contact the Government but did not receive
19   any response.

20   On July 12, 2025, the Government posted a Notice of Forfeiture Action on
21   forfeiture.gov but did not provide said notice to Haiqiang or his attorneys. **Exhibit 3 –** 2025-
22   07-12 Notice of Forfeiture Action. It was only through diligent review of public notices that
23   Haiqiang even saw the public notice.

24
25
26
27
28                          3                       MOTION TO DISMISS AND
                                                    RETURN PROPERTY

1  II.  **Argument**.

2      A.  **The Court must dismiss the case because the Government failed to provide**

3          **sufficient notice and service of process.**

4      The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall ...

5  be deprived of life, liberty, or property, without due process of law."  Individuals must receive

6  notice and an opportunity before the Government deprives them of property.  *See United*

7  *States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993); *see also Paktin Constr. Co.*

8  *v. United States*, 153 Fed. Cl. 513, 521 (Ct. Cl. 2021) ("The Fifth Amendment . . . applies to

9  the property of foreigners taken within the territorial boundaries of the United States.");

10  *Russian Volunteer Fleet v. United States*, 282 U.S. 481, 489 (1931) ("As alien friends are

11  embraced within the terms of the Fifth Amendment, it cannot be said that their property is

12  subject to confiscation here because the property of our citizens may be confiscated in the

13  alien's country.").

14      "A judgment of forfeiture may be entered *only* if the government has published notice

15  of the action within a reasonable time after filing the complaint or at a time the court orders."

16  Supplemental Rule G(4)(a) (emphasis added).  The notice must describe the property with

17  reasonable particularity, state the times under Supplemental Rule G(5) to file a claim to

18  answer, and name the government attorney to be served with the claim and answer.  *Id.*  The

19  Government did not provide any notice of seizure or forfeiture until July 12, 2025, almost

20  three years after seizing Haiqiang's property.  As the Government did not publish notice of

21  the action within a "reasonable time," a judgment of forfeiture cannot be entered.

22      In determining whether the Government unreasonably delayed in instituting forfeiture

23  proceedings, the Court must weigh four factors: (1) length of delay; (2) the reason for the

24  delay; (3) Haiqiang's assertion of his right; and (4) the prejudice to Haiqiang.  *See United*

25  *States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S.

26  555, 564 (1983) (citing *Barker v. Wingo*, 407 U.S. 514 (1972)).  Here, the Government seized

27

28                           4  MOTION TO DISMISS AND
                                     RETURN PROPERTY

1  Haiqiang's assets for 33 months (over 1,000 days) before posting a public notice of forfeiture.

2  The Government did not provide a reason for the delay and did not even attempt to contact

3  Haiqiang despite knowing his status as a potential claimant.  Haiqiang also suffers immense

4  prejudice because of the delay, because if he truly purchased the cryptocurrencies from

5  criminals, those criminals have long since disappeared and any attempts to track down the

6  criminals or investigate will be futile.

7  Given the Government's failure to provide notice "within a reasonable time," the Court

8  must dismiss the action for lack of sufficient service of process and failure to state a claim

9  upon which relief can be granted under Rule 12(b)(5) and 12(b)(6).  *See, e.g.*, *Dwyer v. United*

10  *States*, 716 F. Supp. 1337, 1341 (S.D. Cal. 1989) (finding a seizure notice sent 62 days after

11  seizure to be untimely and warrants the return of property); *United States v. One 1992 Ford*

12  *Mustang GT, VIN 1FACP42E5NF134795*, 73 F. Supp. 2d 1131, 1138 (C.D. Cal. 1999)

13  (finding a notice sent 101 days after seizure to be unreasonable); *United States v. $23,407.69*

14  *in U.S. Currency*, 715 F.2d 162, 163 (5th Cir. 1983) (denying forfeiture on the ground that a

15  13 months delay was inordinate and unjustified); *Eight Thousand Eight Hundred & Fifty*

16  *Dollars ($8,850) in U.S. Currency*, 461 U.S. at 565 (finding an 18 months delay to be "quite

17  significant"); *United States v. Approximately $1.67 Million (US) in Cash, Stock & Other*

18  *Valuable Assets Held by or at 1) Total Aviation Ldt.*, 513 F.3d 991, 1001 (9th Cir. 2008)

19  (finding a 58 months delay to weigh in favor of an unreasonable delay).

20  When the government abandons its investigation, "the person from whom the property

21  is seized is presumed to have a right to its return, and the government has the burden of

22  demonstrating that it has a legitimate reason to retain the property."  *United States v.*

23  *Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987).  In *Mr. Lucky Messenger Service, Inc. v.*

24  *United States*, the Seventh Circuit held that equitable principles "mandate that the property

25  be returned" when the government failed to bring charges 17 months after seizing the property

26  and cannot present evidence justifying such a delay.  587 F.2d 15, 17 (7th Cir. 1978).  Here,

27

28
MOTION TO DISMISS AND
RETURN PROPERTY

1    the Government has not brought any charges against Haiqiang despite seizing his property for

2    almost 3 years, and thus "the legality of the search and seizure is no longer an issue; even if

3    the seizure was lawful the government must justify its continued possession of the property

4    by demonstrating that it is contraband or subject to forfeiture." 809 F.2d at 1369. The

5    Government does not allege Haiqiang partook in or even knew about the alleged criminal

6    activities involving entirely different third parties.

7    Furthermore, even if the Court finds 33 months to potentially be reasonable, the

8    Government did not meet its burden of providing direct notice to Haiqiang. The Government

9    "must send notice of the action and a copy of the complaint to any person who reasonably

10   appears to be a potential claimant on the facts known to the government before the end of the

11   time for filing a claim under Rule G(5)(a)(ii)(B)," with a deadline to file a claim and other

12   required instructions. Supplemental Rule G(4)(b). Under Fed. R. Civ. P. 5(a)(3), if "an action

13   is begun by seizing property and no person is or need to be named as a defendant, any service

14   required before the filing of an appearance, answer, or claim must be made on the person who

15   had custody or possession of the property when it was seized." Similarly, Fed. R. Civ. P. 4(n)

16   requires that "[n]otice to claimants of the property must be given as provided in the statute or

17   by serving a summons under this rule." As shown in Wood's affidavit and subsequent email,

18   the Government was fully aware of Haiqiang's status as a potential claimant and seized the

19   cryptocurrencies from his personal Binance account. Also, as the Government seized the

20   assets through Binance, it could have easily determined and directly provided a notice of

21   forfeiture to the owner of the Binance account. Instead, the Government decided to post a

22   public notice on its website that Haiqiang could have easily missed as a foreign citizen. Given

23   the lack of any direct notice as of the date of this motion, the Government's delay in providing

24   notice and serving process extends well beyond 33 months.

25   For these reasons, and because a judgment of forfeiture may be entered *only* if notice

26   was provided within a "reasonable time," the Court should dismiss the Government's claims

27

28                                        6              MOTION TO DISMISS AND
                                                         RETURN PROPERTY

1    with prejudice and order that the seized property be immediately returned to Haiqiang.  The

2    Government cannot cure this failure to provide notice because even if it provides notice now,

3    it would not be within a reasonable time.

4              **B.      The Cryptocurrencies are not subject to Forfeiture.**

5              A complaint for forfeiture must "state sufficiently detailed facts to support a reasonable

6    belief that the government will be able to meet its burden of proof at trial."  Supplemental

7    Rule G(2)(f).  The Government must demonstrate that it had probable cause to institute a civil

8    forfeiture action and establish, "by a preponderance of the evidence, that the property is

9    subject to forfeiture."  *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1166

10   (9th Cir. 2008).  Here, the Government failed to allege sufficient facts to show it will meet its

11   burden of proof at trial and only alleged that some of the cryptocurrencies in Haiqiang's

12   Binance account could be traced to alleged victims of an alleged crime committed by an

13   entirely different third party.

14             The Government does not allege Haiqiang committed any wrongdoing.  For example,

15   the Government does not allege that Haiqiang had knowledge of the conduct giving rise to

16   the forfeiture or knew of the alleged criminal activities.  The Government does not allege

17   Haiqiang purchased the cryptocurrencies for less than market value.[1]  Thus, as an innocent

18   owner, Haiqiang's "interest in property shall not be forfeited under any civil forfeiture

19   statute."  18 U.S.C. § 983(d).  Even accepting as true the fact that some cryptocurrencies in

20   Haiqiang's account can be traced to alleged victims, this allegation does not sufficiently

21   support the forfeiture of Haiqiang's cryptocurrencies that he purchased in a bona fide

22   transaction.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard…

23   asks for more than a sheer possibility that a defendant has acted unlawfully."); *Bell Atl. Corp.*

24   *v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right

25   _____

26             [1] Instead, the facts will show that Haiqiang purchased the cryptocurrencies in bona fide
     transactions and with fiat money.  *See* Doc. 17: Verified Claim of Haiqiang Lu ¶ 8, Exhibit

27   A.

28                                        7                    MOTION TO DISMISS AND
                                                              RETURN PROPERTY

1    to relief above the speculative level.").

2        Furthermore, based on Wood's affidavit, a substantial portion of Haiqiang's Binance

3    account cannot even be traced to the victims.  *See* Wood's Affidavit ¶ 53 ("While only

4    approximately $1.6 million of the approximately $2.6 million currently in the Target Binance

5    Account is directly traceable to victims of the scam, there is probable cause to believe that the

6    remaining approximately $1 million is either (1) proceeds of the fraud that the government

7    has not been able to trace to date, or (2) commingled funds involved in or used to facilitate

8    the money laundering offenses.").  Thus, as the Government admits, no evidence supports the

9    forfeiture of a significant portion of Haiqiang's Binance account.  Accordingly, at a minimum,

10   the Court must dismiss the Government's claims against 59,939.992 Ethereum Classic and

11   any other unlisted cryptocurrencies that cannot be traced to the alleged scam.  *See, e.g.*, *United*

12   *States v. S. Side Fin., Inc.*, 755 F. Supp. 791, 801 (N.D. Ill. 1991) (dismissing claims against

13   two safe deposit boxes because the complaint fails to connect the contents of the safe deposit

14   boxes with any illegal transactions).

15   **III.   Conclusion.**

16       As an innocent owner, Haiqiang should not be forced to engage in a multi-year fight

17   for his rightful property.  The Government's years of delay stripped Haiqiang's right to due

18   process.

19       For the foregoing reasons, Haiqiang respectfully requests that the Court dismiss this

20   case with prejudice and order the immediate return of the seized property to him.  At a

21   minimum, the Court must dismiss the claims against 59,939.992 Ethereum Classic and order

22   the return of any cryptocurrencies that cannot be linked to any alleged criminal activities.

23   Haiqiang also seeks attorney fees, litigation costs, and an imputed amount of interest pursuant

24   to 28 U.S.C. § 2465(b).  Haiqiang further requests any other relief that the Court deems just

25   and proper.

26

27

28                                      8                    MOTION TO DISMISS AND
                                                             RETURN PROPERTY

DATED this 22nd day of August 2025.

TIFFANY & BOSCO, P.A.

By

Robert D. Mitchell
Christopher J. Waznik
Anne P. Barber
CM Matthew Luk
Camelback Esplanade II, Seventh Floor
2525 E. Camelback Road
Phoenix, Arizona 85016
*Attorneys for Claimant Haiqiang Lu*

9                    MOTION TO DISMISS AND
                     RETURN PROPERTY

EXHIBIT 1

Robert D. Mitchell (SBN 011922)
Christopher J. Waznik (SBN 032812)
Anne P. Barber (SBN 035591)
CM Matthew Luk (SBN 037238)

**TB** T I F F A N Y & B O S C O
P.A.

Camelback Esplanade II, Seventh Floor
2525 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 255-6000
E-mail: rdm@tblaw.com; cjw@tblaw.com;
apb@tblaw.com; cml@tblaw.com
*Attorneys for Claimant Haiqiang Lu*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>v.<br><br>1,150,049.51316 TetherUS ("USDT")<br>59,939.992 Ethereum Classic ("ETC")<br><br>          Defendants, | No.: 4:23-cv-00147-MSA<br><br>**GOOD FAITH CONSULTATION CERTIFICATE** |

   I, CM Matthew Luk, counsel for Claimant Haiqiang Lu, hereby submit this Good Faith Consultation Certificate as required by Local Rule 12.1(c), and hereby certify that I conferred in good faith with Matthew Eltringham, legal counsel of record for Plaintiff United States of America, in an effort to resolve the issues set forth in Claimant Haiqiang Lu's Motion to Dismiss. The parties conferred via a telephonic meet and confer, as well as through written correspondence, but we were unable to resolve the issues raised in the motion.

DATED this 22nd day of August 2025.

TIFFANY & BOSCO, P.A.

By _____
CM Matthew Luk

EXHIBIT 2

SEIZURE WARRANT (REV. 03/13)

# UNITED STATES DISTRICT COURT
## for the District of Arizona

| | |
|---|---|
| *In the Matter of the Seizure of* | Mag. No.  22-08946MB |
| Any and all funds and cryptocurrency in Binance account for User ID 438672410 held in the name of HAIQIANG LU **(TARGET BINANCE ACCOUNT).**<br><br>USAO# 2022R05663 | CIVIL AND CRIMINAL WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE |

TO:     **Federal Bureau of Investigation (FBI) Special Agent Nathan Wood**, and any authorized law enforcement officer of the United States,

Application and Affidavit having been made before me by affiant Special Agent Nathan Wood, a federal law enforcement officer, who has reason to believe that certain property is subject to forfeiture to the United States, namely:

Any and all funds and cryptocurrency in Binance account for User ID 438672410 held in the name of HAIQIANG LU (**TARGET BINANCE ACCOUNT**).

which is subject to seizure under Title 18, United States Code, Section 981(b) and Title 21, United States Code, Section 853(f), concerning violations of Title 18, United States Code, Sections, 1341, 1349, and 1956.

I find that the affidavit, and/or any recorded testimony, establish probable cause to believe that the property so described is subject to seizure and that grounds exist for the issuance of this seizure warrant, and that an order under Title 21, United States Code, Section 853(e) may not be sufficient to assure the availability of the property for forfeiture.

The United States is authorized to seize any and all cryptocurrency in the **TARGET BINANCE ACCOUNT** by transferring the full account balance in each wallet to a public cryptocurrency address controlled by the United States.

YOU ARE COMMANDED to execute this warrant and seize the property on or before ___14 days___
*(not to exceed 14 days)*

☒   in the daytime 6:00 a.m. to 10:00 p.m.          ☐   at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a copy of the warrant and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the United States Magistrate Judge who authorized this warrant.

☐   I find that immediate notification may have an adverse result listed in Title 18, United States Code, Section 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched and seized

☐   for _____ days *(not to exceed 30)*.

☐   until, the facts justifying, the later specific date of

| | |
|---|---|
| October 27, 2022 at 1:35 p.m. | |
| *Date & Time Issued* | *Judge's signature* |
| Tucson, Arizona | D. THOMAS FERRARO, United States Magistrate Judge |
| *City and State* | *Printed name and title* |

SEIZURE WARRANT RETURN (REV. 03/13)

# RETURN

Case No.:    22-08946MB

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| | | |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PROPERTY SEIZED PURSUANT TO THE WARRANT

# CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
Executing Officer's Signature

_____
Printed Name and Title

APPLICATION FOR SEIZURE WARRANT (REV. 03/13)

# UNITED STATES DISTRICT COURT
## *for the District of Arizona*

| | |
|---|---|
| *In the Matter of the Seizure of* | Mag. No.   22-08946MB |
| Any and all funds and cryptocurrency in Binance account for User ID 438672410 held in the name of HAIQIANG LU (**TARGET BINANCE ACCOUNT**).<br><br>USAO# 2022R05663 | APPLICATION AND AFFIDAVIT<br>FOR<br>CIVIL AND CRIMINAL SEIZURE WARRANT |

I, Nathan Wood, a federal law enforcement officer, request a seizure warrant and state under penalty of perjury that I have reason to believe that certain property is subject to forfeiture to the United States, namely:

Any and all funds and cryptocurrency in Binance account for User ID 438672410 held in the name of HAIQIANG LU (**TARGET BINANCE ACCOUNT**)

which is subject to seizure pursuant to Title 18, United States Code, Section 981(b), and Title 21, United States Code, Section 853(f), concerning violations of Title 18, United States Code, Sections, 1341, 1349, and 1956. The facts to support a finding of probable cause for issuance of a seizure warrant are as follows:

**See attached Affidavit incorporated by reference herein.**

The United States requests authorization to seize any and all cryptocurrency from the TARGET BINANCE ACCOUNT by transferring the full account balance in each wallet to a public cryptocurrency address controlled by the United States.

NATHAN WOOD

Digitally signed by NATHAN WOOD
Date: 2022.10.27 11:05:14 -07'00'

*Applicant's signature*

Nathan Wood, Special Agent, Federal Bureau of Investigation

*Printed name and title*

Electronically signed, submitted and telephonically sworn to me.

October 27, 2022

*Date*

Tucson, Arizona

*City and State*

*Judge's signature*

D. THOMAS FERRARO, United States Magistrate Judge

*Printed name and title*

**AFFIDAVIT**

I, Special Agent Nathan Wood (Affiant), Federal Bureau of Investigation, having been duly sworn, declare and state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for the issuance of a seizure warrant for any and all funds held in cryptocurrency in the Binance account for User ID 438672410 in the name of HAIQIANG LU (the "Target Binance Account"). The Target Binance Account currently holds approximately $2.6 million in cryptocurrency, which represent proceeds of a wide-ranging fraud and money laundering conspiracy that utilized fraudulent websites to lure in victims based on fake investments in cryptocurrencies.

2. I submit based on my training, experience and the facts as set forth in this affidavit, there is probable cause to believe that the owner of the Target Binance Account and other co-conspirators have violated Title 18, United States Code, §§ 1343 (Wire Fraud), 1349 (Conspiracy to Commit Wire Fraud), 1956(a)(1)(B)(i) (Money Laundering), and 1956(h) (Conspiracy to Commit Money Laundering), and that the proceeds from these crimes are therefore subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. §853(f) and forfeiture pursuant to Title 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and (a)(2).

**BACKGROUND OF AFFIANT**

3.  I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since May 2018.  I have received training at the Basic Field Training Course in Quantico, Virginia, with the FBI. My current responsibilities include investigating complex financial crimes and other related fraud and financial crimes.  I am currently assigned to the Tucson, Arizona Resident Agency, which is part of the Phoenix Division Field Office of the FBI.  Since graduating from the FBI Academy, my experience as an FBI agent includes conducting physical surveillance, debriefing informants, interviewing witnesses, subjects, and victims of crimes, as well as executing dozens of search and arrest warrants.  I have coordinated and collaborated with other law enforcement agencies in ongoing investigations.

4.  Prior to becoming a Special Agent with the FBI, I worked eleven years as a Trooper with the Utah Highway Patrol in different counties across the state.  As a Trooper, my experience included investigating criminal offense such as domestic violence, drug related offenses, and traffic violations.  I have earned two bachelor's degrees, with one in Intelligence Studies/Counterintelligence in June of 2016, and the second in Computer Security/Cyber Security in November of 2020, both from American Military University.

5. This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience and advice received concerning the use of computers in criminal activity and the forensic analysis of electronically stored information ("ESI"). Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not set forth all of my knowledge about this matter. All dates are on or about the date specified. All amounts are approximate.

**BACKGROUND ON CRYPTOCURRENCY**

6. Based on my training, research, education, and experience, I am familiar with the following relevant terms and definitions:

a. Cryptocurrency, a type of virtual currency, is a decentralized, peer to peer, network-based medium of value or exchange that may be used as a substitute for fiat (i.e. national currencies like the dollar, euro, yen, etc) currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies. Cryptocurrency can exist digitally on the Internet, in an electronic storage device, or in cloud-based servers. Although not usually stored in any physical form, public and private keys (described below) used to transfer cryptocurrency from one person or place to another can be printed or written on a piece of paper or other tangible object.

Cryptocurrency can be exchanged directly person to person, through a cryptocurrency exchange, or through other intermediaries. Generally, cryptocurrency is not issued by any government, bank, or company; it is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Most cryptocurrencies have a "blockchain," which is a distributed public ledger, run by the decentralized network, containing an immutable and historical record of every transaction[1]. Cryptocurrency is not illegal in the United States.

b.  Bitcoin[2] ("BTC") is a type of cryptocurrency. Payments or transfers of value made with bitcoin are recorded in the Bitcoin blockchain and thus are not maintained by any single administrator or entity. As mentioned above, individuals can acquire bitcoin through exchanges (i.e., online companies which allow individuals to purchase or sell cryptocurrencies in exchange for fiat currencies or other cryptocurrencies), bitcoin ATMs, or directly from other people. Individuals can also acquire cryptocurrencies by "mining." An individual can "mine" bitcoins by using his or her computing power to solve

---

[1] Some cryptocurrencies operate on blockchains that are not public and operate in such a way to obfuscate transactions, making it difficult to trace or attribute transactions.

[2] Since Bitcoin is both a cryptocurrency and a protocol, capitalization differs. Accepted practice is to use "Bitcoin" (singular with an uppercase letter B) to label the protocol, software, and community, and "bitcoin" (with a lowercase letter b) to label units of the cryptocurrency. That practice is adopted here.

a complicated algorithm and verify and record payments on the blockchain. Individuals are rewarded for this task by receiving newly created units of a cryptocurrency. Individuals can send and receive cryptocurrencies online using many types of electronic devices, including laptop computers and smart phones. Even though the public addresses of those engaging in cryptocurrency transactions are recorded on a blockchain, the identities of the individuals or entities behind the public addresses are not recorded on these public ledgers. If, however, an individual or entity is linked to a public address, it may be possible to determine what transactions were conducted by that individual or entity. Bitcoin transactions are therefore sometimes described as "pseudonymous," meaning that they are partially anonymous. And while it's not completely anonymous, bitcoin allows users to transfer funds more anonymously than would be possible through traditional banking and financial systems.

c. Tether (USDT), USD Coin (USDC), Ethereum (ETH), Wrapped Bitcoin (WBTC) and Ethereum Classic (ETC) are types of cryptocurrencies.

d. Cryptocurrency is stored in a virtual account called a wallet. Wallets are software programs that interface with blockchains and generate and/or store public and private keys used to send and receive cryptocurrency. A public key or address is akin to a bank account number, and a private key is

akin to a PIN number or password that allows a user the ability to access and transfer value associated with the public address or key. To conduct transactions on a blockchain, an individual must use the public address (or "public key") and the private address (or "private key"). A public address is represented as a case-sensitive string of letters and numbers, 26–25 characters long. Each public address is controlled and/or accessed through the use of a unique corresponding private key—the cryptographic equivalent of a password or PIN—needed to access the address. Only the holder of an address' private key can authorize any transfers of cryptocurrency from that address to another cryptocurrency address.

e. Although cryptocurrencies have legitimate uses, cryptocurrency is also used by individuals and organizations for criminal purposes such as money laundering and is an oft used means of payment for illegal goods and services on hidden services websites. By maintaining multiple wallets, those who use cryptocurrency for illicit purposes can attempt to thwart law enforcement's efforts to track transfers, trades, purchases, and other financial transactions.

f. Exchangers and users of cryptocurrencies store and transact their cryptocurrency in a number of ways, as wallet software can be housed in a variety of forms, including on a tangible external device ("hardware

wallet"), downloaded on a PC or laptop ("desktop wallet"), with an Internet-based cloud storage provider ("online wallet"), as a mobile application on a smartphone or tablet ("mobile wallet"), printed public and private keys ("paper wallet"), and as an online account associated with a cryptocurrency exchange. Because these desktop, mobile, and online wallets are electronic in nature, they are located on mobile devices (e.g., smart phones or tablets) or at websites that users can access via a computer, smart phone, or any device that can search the Internet. Moreover, hardware wallets are located on some type of external or removable media device, such as a USB thumb drive or other commercially available device designed to store cryptocurrency (e.g. Trezor, Keepkey, or Nano Ledger). In addition, paper wallets contain an address and a QR code[3] with the public and private key embedded in the code. Paper wallet keys are not stored digitally. Wallets can also be backed up into, for example, paper printouts, USB drives, or CDs, and accessed through a "recovery seed" (random words strung together in a phrase) or a complex password. Additional security safeguards for cryptocurrency wallets can include two-factor authorization (such as a password and a phrase). I also know that individuals possessing cryptocurrencies often have safeguards in place to ensure that their

---

[3] A QR code is a matrix barcode that is a machine-readable optical label.

cryptocurrencies become further secured in the event that their assets become potentially vulnerable to seizure and/or unauthorized transfer.

g.  "Exchangers" and "exchanges" are individuals or companies that exchange cryptocurrencies for other currencies, including U.S. dollars. According to Department of Treasury, Financial Crimes Enforcement Network ("FinCEN") Guidance issued on March 18, 2013, virtual currency administrators and exchangers, including an individual exchanger operating as a business, are considered money services businesses.[4] Such exchanges and exchangers are required to register with FinCEN and have proper state licenses (if required under applicable state law). From my training and experience, I know that registered money transmitters are required by law to follow Bank Secrecy Act anti-money laundering ("AML") regulations, "Know Your Customer" ("KYC") protocols, and other verification procedures similar to those employed by traditional financial institutions. For example, FinCEN-registered cryptocurrency exchangers often require customers who want to open or maintain accounts on their exchange to provide their name, address, phone number, and the full bank account and routing numbers that the customer links to an exchange account. As a result, there is

---

[4] See "Application of FinCEN's Regulations to Person Administering, Exchanging, or Using Virtual Currencies," available at https://www.fincen.gov/resources/statutesregulations/ guiadance/application-fincens-regulations-persons-administering.

significant market demand for illicit cryptocurrency-for-fiat currency exchangers, who lack AML or KYC protocols and often also advertise their ability to offer customers stealth and anonymity. These illicit exchangers routinely exchange fiat currency for cryptocurrencies by meeting customers in person or by shipping cash through the mail. Due to the illicit nature of these transactions and their customers' desire for anonymity, such exchangers are frequently able to charge a higher exchange fee, often as high as 9–10% (in contrast to registered and BSA-compliant exchangers, who may charge fees as low as 1–2%).

h.  Some companies offer cryptocurrency wallet services which allow users to download a digital wallet application onto their smart phone or other digital device. A user typically accesses the wallet application by inputting a user generated PIN code or password. Users can store, receive, and transfer cryptocurrencies via the application; however, many of these companies do not store or otherwise have access to their users' funds or the private keys that are necessary to access users' wallet applications. Rather, the private keys are stored on the device on which the wallet application is installed (or any digital or physical backup private key that the user creates). As a result, these companies generally cannot assist in seizing or otherwise restraining their users' cryptocurrency. Nevertheless, law enforcement could seize

cryptocurrency from the user's wallet directly, such as by accessing the user's smart phone, accessing the wallet application, and transferring the cryptocurrency therein to a law enforcement-controlled wallet. Alternatively, where law enforcement has obtained the recovery seed for a wallet (see above), law enforcement may be able to use the recovery seed phrase to recover or reconstitute the wallet on a different digital device and subsequently transfer cryptocurrencies held within the new wallet to a law enforcement-controlled wallet.

i.  Binance Holdings Limited (Binance), Coinbase, Inc. (Coinbase), Gemini Trust Company, LLC (Gemini) and Foris Dax, Inc. (Crypto.com) are cryptocurrency exchanges.

j.  imToken is digital wallet with multi-chain asset management. Tokenlon is imToken's trading platform, which provides swapping of tokens.

**PROBABLE CAUSE**

7.  The FBI Phoenix Division, Tucson Resident Agency (TRA) field office is investigating an investment fraud scam, commonly referred to as "Pig Butchering," perpetrated on many victims throughout the Tucson, Arizona (United States) area as well as many victims located throughout the United States. The investment fraud scam typically begins when the victims are contacted through social media platforms or messaging services.  From there,

the scammer often establishes a more personal relationship with the victim using manipulative tactics similar to those used in online romance scams. The victims are directed to fraudulent websites and to download an application from the internet. The victims are then instructed to invest funds by making cryptocurrency purchases and transferring the cryptocurrency to wallet addresses controlled by the scammers.  After the cryptocurrency transfers occur, the fraudulent investment platform website or application reflects the victims' deposits.  For the next month or so, the fraudulent investment platform website or application appears to reflect large financial gains in the victims' accounts, often times causing the victims to invest additional funds. However, the investment gains displayed on the fraudulent investment platform website or application are fabricated. When the victims attempt to withdraw their funds, they are told they are unable to by the fraudulent investment platforms' "customer service" team, which gives the victims various excuses as to why the funds are unable to be withdrawn and, in some cases, instructs the victims to pay additional fees under the guise that such fees will allow a release of the victims' funds.  After a period of time, the victims are locked out of their accounts and lose all of their funds, ultimately causing the victims financial and emotional ruin.

8. From the approximate dates of December of 2021 to present, the FBI TRA has identified at least 32 victims located throughout the United States that have lost at least $20 million in U.S. currency due to a Pig Butchering scam that uses multiple different fraudulent websites and platforms. As outlined in detail below, money from 13 of these victims flowed into either the Target Binance Account or one of the primary intermediary accounts that funneled other fraud proceeds to the Frozen Binance Account. Many of the 32 victims, including 7 victims in the Tucson, Arizona area, were defrauded through one of the scam's primary fraudulent websites: https://www.massusa.com. Because the victims are all linked together—either through the tracing of their funds to the same destinations or the victims' use of a particular fraudulent website, or both—there is probable cause to believe that the perpetrators of the scam are engaged in a single wide-ranging conspiracy to defraud the victims and launder the proceeds to various cryptocurrency accounts, including the Target Binance Account.

9. This affidavit seeks the seizure of fraud proceeds extracted from 13 of the 32 identified victims, which are currently frozen in the Binance account for User ID 438672410 in the name of HAIQIANG LU (the "Target Binance Account").

Tracing of Victims' Funds Through Various Cryptocurrency Accounts

10. An FBI Forensic Accountant traced the movement of the cryptocurrency transactions in this case. Cryptocurrency transactions are visible as open-source blockchain data on the internet. My affidavit does not include all of the blockchain analysis, but rather focuses on the tracing of the victims' funds. The cryptocurrency transactions included in this affidavit demonstrates the movement of the funds from the victims' exchange accounts, through multiple intermediary wallet addresses, to the identified Target Binance Account or two of the intermediary wallet addresses closely linked to the Target Binance Account, which I refer to as the two Malaysian Intermediary Accounts.

11. The intermediary wallet addresses often had multiple cryptocurrency transactions, but the cryptocurrency transactions shown in the below tables only include the deposit of the victims' funds into the wallet addresses and then withdrawals out of the wallet addresses that included the victims' funds. There are instances where the victims' funds are comingled with other funds in the intermediary wallet addresses; however, the transfer out of the wallet addresses includes the victims' funds. The movement of the victims' funds to wallet intermediary addresses are referred to as "hops" between wallet addresses. In my training and experience, these "hops," which often occurred on the same day and close in time to each other, are a common method to

engage in concealment money laundering and attempt to thwart law enforcement efforts at tracing fraud proceeds.

### Victim G.C. and L.L. and the two Malaysian Intermediary Accounts

12. Two of the scam victims, one of whom was directed to make investments through the fraudulent massusa.com website, had their funds unwittingly transferred to the two Malaysian Intermediary Accounts closely linked to the Target Binance Account.

13. On April 21, 2022, the FBI TRA interviewed victim G.C., via telephone, as G.C. currently resides in Southbury, Connecticut. In January of 2022, G.C. met an Asian woman on the social platform, LinkedIn.  G.C. began an online relationship with the Asian woman he knew as "Wendy Yu" (SUSPECT #1). SUSPECT #1 had pictures on her profile that depicted a lavish lifestyle which intrigued G.C.  SUSPECT #1 told G.C. she was able to afford such a lifestyle by trading cryptocurrency and wanted to show G.C. how to do the same.  SUSPECT #1 showed G.C. step-by-step on what software to download and how to use the cryptocurrency exchange Gemini.  G.C. made a few small investments at first to become "comfortable" in making cryptocurrency trades and made his trades by creating an account with the website: https://www.massusa.com, at the direction of SUSPECT #1. After seeing an immediate return on his

investment, SUSPECT #1 pressured G.C. to invest even more, stating "the more you invest the bigger the return."

14. From February 17, 2022, to March 11, 2022, G.C., under the direction of SUSPECT #1, transferred $450,000 from his personal savings account into Gemini, purchased cryptocurrency, and then transferred the cryptocurrency into a wallet address controlled by massusa.com.  Using the Gemini exchange, G.C. attempted to make a withdrawal from his massusa.com account, but he was told he was not able to withdraw his funds and shortly after his account balance was zero.  G.C. made many unsuccessful attempts to contact SUSPECT #1 to confront her about his funds.  G.C. made the following deposits at the direction of SUSPECT #1:

| Date Wire Sent to Exchange | Dollar Amount of Wire Sent to Exchange | Name of Bank/Instituti on Wire Originated | Name of Exchange Wire Deposited Into |
|---|---|---|---|
| February 17, 2022 | $ 50,000.00 | Wells Fargo | Gemini |
| February 28, 2022 | $100,000.00 | Wells Fargo | Gemini |
| March 11, 2022 | $300,000.00 | Wells Fargo | Gemini |

15. On July 1, 2022, the FBI New York Division interviewed L.L., in person at the FBI New York office along with L.L.'s husband. It was learned that on March 31, 2022, L.L. had a LinkedIn social profile and was approached by "Peter Lei" (SUSPECT #2).  L.L. was from Changsha, China and SUSPECT #2 claimed he was also from Changsha, China and used this as a way to connect with L.L.  SUSPECT

#2 claimed to work for a cryptocurrency company and urged L.L. to invest in cryptocurrency via the website: https://www.directedgebro.com. SUSPECT #2 explained to L.L. that directedgebro.com could trade in futures and taught L.L. how to trade using the website.  SUSPECT #2 told L.L. the more she invested into directedgebro.com the more time she would have to place trades on the website.

16. From April 13, 2022, to May 9, 2022, SUSPECT #2 instructed L.L. to transfer approximately $965,000 from her savings and IRA accounts into Coinbase, purchase cryptocurrency, and then transfer the cryptocurrency into a wallet address controlled by directedgebro.com. On May 10, 2022, after making a profit, L.L. attempted to transfer her investment from directedgebro.com but was unsuccessful.  L.L. contacted the website's customer service and was advised she needed to pay a 37% tax on profit to the website.  On May 13, 2022, L.L. under the instruction of the directedgebro.com customer support representative, transferred another $100,000 U.S. currency to Coinbase to purchase cryptocurrency and then transfer the cryptocurrency to a wallet address controlled by directedge.com. All of L.L.'s cryptocurrency deposits were into wallet addresses provided to her by SUSPECT #2 and the website. After L.L. paid the "tax fees," she was then advised she still needed to pay an additional $277,000 in additional taxes before she could access her funds.

When L.L. confronted SUSPECT #2, he denied having any part of the website and claimed he also had his funds stolen.  L.L. lost a total of $965,000 in the investment scam. L.L. made the following deposits at the direction of SUSPECT #2:

| Date Wire Sent to Exchange | Dollar Amount of Wire Sent to Exchange | Name of Financial Insitution | Name of Exchange Wire Deposited |
|---|---|---|---|
| April 13, 2022 | $ 100,000.00 | Merril Lynch IRA | Coinbase |
| April 20, 2022 | $ 350,000.00 | Merril Lynch IRA | Coinbase |
| April 20, 2022 | $ 50,000.00 | Bank of America | Coinbase |
| April 26, 2022 | $ 50,000.00 | Bank of America | Coinbase |
| April 29, 2022 | $ 170,000.00 | Charles Schwab | Coinbase |
| May 2, 2022 | $ 80,000.00 | Fidelity | Coinbase |
| May 6, 2022 | $ 25,000.00 | Charles Schwab | Coinbase |
| May 6, 2022 | $ 40,000.00 | Bank of America | Coinbase |
| May 13, 2022 | $ 100,000.00 | Bank of America | Coinbase |
| **TOTAL** | **$965,000.00** | | |

17. As outlined below, G.C.'s and L.L.'s "investments" through the fraudulent websites, including massusa.com, were transferred through various intermediary wallet addresses, including the two Malaysian Intermediary Accounts closely linked to the Target Binance Account.

18. G.C.'s transfer on or about March 11, 2022, from his Gemini account in ETH was to wallet address 0xD9f2...e18F.:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| 0x6c1ac6003acc48aeed855b0d75145db3af b0c50be9238144cd8b52516316eeba | 03/11/2022 9:28:18 PM | 115.068333 | 0xD9f2...e18F |
| 0xbd5989d7bdc734882179a3949324c73fb 6b2c7f195a91fb5540feb6a53e0ab6d | 03/11/2022 10:23:52 PM | (115.0683) | 0x8462...Bcb6 |

    a.  The next hop with G.C.'s funds in ETH was:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| 0xbd5989d7bdc734882179a3949324c73fb6b2c7f195a91fb5540feb6a53e0ab6d | 03/11/2022 10:23:52 PM | 115.0683 | 0x8462...Bcb6 |
| 0x731532af7d9827f5ac1436a25f99beb13e15edb454404403ca1b24bf6dbb0b5f | 03/11/2022 10:37:52 PM | (115) | 0x03f3...9659 |

    b. G.C.'s funds in ETH were then swapped for USDT by using Tokenlon in

       wallet address 0x8462...Bcb6 as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| 0x731532af7d9827f5ac1436a25f99beb13e15edb454404403ca1b24bf6dbb0b5f | 03/11/2022 10:37:52 PM | 294,948.357205 | 0x8462...Bcb6 |
| 0xb8c3db2cfe50f444f347e0c02a69c848255cc262e391e3f9115632e3f19d6866 | 03/11/2022 11:46:25 PM | (297,895.7302) | 0x5a49...B3fE |

    c. The next hop with G.C.'s funds in USDT was:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| 0xb8c3db2cfe50f444f347e0c02a69c848255cc262e391e3f9115632e3f19d6866 | 03/11/2022 11:46:25 PM | 297,895.7302 | 0x5a49...B3fE |
| 0x2526356c0c0efd39cb843ea9de66ea7c807bfe614eaef24695598f5c2a7092e8 | 03/12/2022 7:01:55 AM | (1,028,648) | 0xB0d1...fBC9 |

    d. The next hop with G.C.'s funds in USDT was:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| 0x2526356c0c0efd39cb843ea9de66ea7c807bfe614eaef24695598f5c2a7092e8 | 03/12/2022 7:01:55 AM | 1,028,648 | 0xB0d1...fBC9 |
| 0x3c444768123c7d46c1f37d218c23143061e9338b0df9a78f5ec3fb4488ec0fd | 03/12/2022 5:31:19 PM | (500,000) | 0x949A...207e |

19. According to records obtained from Binance, the deposit address

    0x949A5293D487621184AE45A0E7cCF8d77a6D207e (0x949A...207e), that

    received some of G.C.'s funds, belongs to the following:

        User ID: 421799405
        Name: SIEW JIN WEI
        KYC Document Issuer: Malaysia
        Account Registration: March 12, 2022

According to the Deposit History report and Withdrawal History report provided by Binance for User ID: 421799405, from approximately March 12, 2022, through approximately June 18, 2022, the account demonstrated a recurring pattern of deposit of USDT followed by rapid withdrawals to external addresses. This account has no material remaining balance.  As outlined below, this is one of the Malaysian Intermediary Accounts closely linked to the Target Binance Account.

20. L.L.'s transfer on or about April 13, 2022, from her Coinbase account in USDC was to wallet address 0x5274...f9a8:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| 0x3d036ede8e84834f2e1460a85b5e38805c907c38d0daffd1827ac311369567ed | 04/13/2022 6:04:58 PM | 99,981.847646 | 0x5274...f9a8 |
| 0xf09eb292803f2a4f0805f157f3a1e23304f945b1092c632e893e6ab554e6475c | 04/13/2022 6:10:11 PM | (99,981.847646) | 0x60F6...26f4 |

    a. The next hop with L.L.'s funds in USDC was:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| 0xf09eb292803f2a4f0805f157f3a1e23304f945b1092c632e893e6ab554e6475c | 04/13/2022 6:10:11 PM | 99,981.847646 | 0x60F6...26f4 |
| 0xa8242974dea0ed7f44486db77926a03aa6727e38e1b1cdb80013911ebe8c493d | 04/13/2022 6:16:10 PM | (99,981.8476) | 0x4a14...650d |

    b. L.L.'s funds in USDC was then swapped for USDT by using Tokenlon in wallet address 0x60F6...26f4 as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| 0xa8242974dea0ed7f44486db77926a03aa6727e38e1b1cdb80013911ebe8c493d | 04/13/2022 6:16:10 PM | 99,927.054565 | 0x60F6...26f4 |
| 0x95f87fb79e5b49aef57f9cf2400e8f08e19e2a4a96da9f0a30b1b832ab2b56c6 | 04/13/2022 6:28:39 PM | (99,927.054565) | 0x3Edc...8330 |

    c. The next hop with L.L.'s funds in USDT was:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| 0x95f87fb79e5b49aef57f9cf2400e8f08e19e2a4a96da9f0a30b1b832ab2b56c6 | 04/13/2022 6:28:39 PM | 99,927.054565 | 0x3Edc...8330 |
| 0x78452f4b24da0ec583c588b9531e7625e76512d8f6af272ac90448cd3f8bea75 | 04/14/2022 12:50:04 PM | (999,900) | 0x681d...602D |

    d. The next hop with L.L.'s funds in USDT was:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| 0x78452f4b24da0ec583c588b9531e7625e76512d8f6af272ac90448cd3f8bea75 | 04/14/2022 12:50:04 PM | 999,900 | 0x681d...602D |
| 0xc3fc596a6e62d5b68d518ec40ed0f402aed43c2e06f1cb717e106dacc7f72d6a | 04/24/2022 2:25:36 PM | (300,000) | 0x949A...207e |
| 0xe4587831e7da27223d81569bb5860d8a1256f31823e9b8bf5fcedeea94606162 | 04/24/2022 2:26:35 PM | (300,000) | 0xCE11...91C8 |
| 0x677d19c26b193efa5fb8d3c0708e56acfa7af2079ba6b3782cffb79e3a86ea4a | 04/24/2022 2:36:14 PM | (350,000) | 0x949A...207e |
| 0x0b0779f66d09e975713f36775f1a7b5a983e34f191c1a0e76b38edf922e618e3 | 04/24/2022 2:37:19 PM | (350,000) | 0xCE11...91C8 |

21. As shown above, some of L.L.'s funds were deposited into 0x949a...207e, which is the deposit address for Binance User ID: 421799405. This is the same Binance account that some of G.C.'s funds were deposited into. In addition, some of L.L.'s funds were deposited into 0xCE11...91C8.

22. According to records obtained from Binance, the deposit address 0xCE11d194D57A093C62Fb638b907394fdC97091C8 (0xCE11...91C8) belongs to the following:

        User ID: 421798906
        Name: LAY FOOK CHUEN
        KYC Document Issuer: Malaysia
        Account Registration: March 12, 2022

According to the Deposit History report and Withdrawal History report provided by Binance for User ID: 421798906, from approximately April 24,

2022, through approximately May 20, 2022, the account demonstrated a recurring pattern of deposit of USDT followed by rapid withdrawals to external addresses. This account has no material remaining balance.  This is the other Malaysian Intermediary Account closely linked to the Target Binance Account.

23. As noted above, the two Malaysian Intermediary Accounts both have an account registration date of March 12, 2022. In addition, Binance provided the approved devices that have accessed these Binance accounts. According to Binance, device_uuid is the UUID for the app installation on MacOS or iOS. If a user uninstalls and reinstalls the app, the UUID will change. Also, bnc-uuid is a unique identifier Binance calculates for Android and other clients (non-web) to detect the same device between small changes in device characteristics. Below is some of the information that Binance provided about the approved devices for the two Malaysian Intermediary Accounts:

|  | SIEW JIN WEI (User ID: 421799405) | LAY FOOK CHUEN (User ID: 421798906) |
|---|---|---|
| app_install_date | 2022-03-12 20:06:24 | 2022-03-12 20:06:24 |
| device_uuid | 6ED08D02-D86C-4350-89D6-A8104F3A7159 | 6ED08D02-D86C-4350-89D6-A8104F3A7159 |
| bnc-uuid | 6ED08D02-D86C-4350-89D6-A8104F3A7159 | 6ED08D02-D86C-4350-89D6-A8104F3A7159 |
| brand_model | iPhone 11 | iPhone 11 |

The same account registration date and the same approved device information shown above indicates that the same individual controls both Malaysian Intermediary Accounts.

24. A review of the Withdrawal History report for the two Malaysian Intermediary Accounts revealed that both Binance accounts withdrew funds to an external

address    TBgsF7BuW2fksDx4wLgExgUHvtC1s75cgy    (TBgsF7...5cgy).    The

transactions in TBgsF7...5cgy showing the transfers from the two Malaysian

Intermediary Accounts were:

| Transaction Hash | Timestamp | Amount | Wallet Address |
|---|---|---|---|
| c4f8b0d3ee1100672a43d4fe6dfacfbb12ae904fb51f06c3f807dbb810e0d54c | 05/05/2022 7:09:33 AM | 200,434 | TBgsF7...5cgy |
| 521b675de9063ed4aa4c0be2a33043d377dd5e27d824bd8fec1baaadb1c9fff2 | 05/05/2022 7:10:42 AM | 200,499 | TBgsF7...5cgy |
| 2dd8681a492abdb9a7e3f9e40614e8c500d865e8f7c5a4ac9bebb8434b473e9f | 05/05/2022 4:12:57 PM | 174,426 | TBgsF7...5cgy |
| b72e46e57da401e1912aeb4cb1874db76cd92bad6570708dfb02f340086ed7b5 | 05/05/2022 4:14:33 PM | (558,133) | TPbxGy...d4CL |

25. As shown in this table, the funds from TBgsF7...5cgy were, in turn, transferred

to wallet address TPbxGy...d4CL.  According to records obtained from Binance,

the    deposit    address    TPbxGyY2cHc4ie1pWZmQ1Z4kBwtMgQd4CL

(TPbxGy...d4CL) belongs to the following:

> User ID: 438672410
> Name: HAIQIANG LU
> KYC Document Issuer: Vanuatu
> Account Registration: April 15, 2022

This is the Target Binance Account, which currently has a balance of

1,150,053.06316 USDT and 59,940 ETC, which is approximately $2.6 million in

U.S. dollars as of October 25, 2022.

26. The Target Binance Account has two wallet addresses associated with the

account:    TPbxGy...d4CL    (as    shown    above),    and

0xc4a31336a25602cccf86db9a692059354d950a16    (0xc4a3...0a16).    As

outlined in detail below, through review of the Deposit History report for the

Target Binance Account, blockchain analysis, obtaining records from exchanges, and interviews conducted, the FBI was able to determine that the Target Binance Account received stolen funds from at least 4 victims in deposit address 0xc4a3…0a16 and at least 7 additional victims in deposit address TPbxGy...d4CL.  In addition, a large portion of the fraud proceeds were routed through the two Malaysian Intermediary Accounts before being transferred to the Target Binance Account.

<u>4 Victims' Stolen Funds Transferred to Target Binance Account Wallet Address 0xc4a3…0a16</u>

27. On September 29, 2022, the FBI TRA interviewed D.C., who is an elderly victim of 81 years old, via telephone, as D.C. currently resides Irvine, California.  In April of 2022, D.C. was contacted by someone named "Coco" who also went by "Alice" (SUSPECT #3) on an online application called Line.  D.C. and SUSPECT #3 communicated for several weeks.  SUSPECT #3 represented herself as a young attractive woman from Beijing who had lived in the states for the past seven years and who had recently moved from Miami, Florida to Irvine, California. During their conversations, SUSPECT #3 brought up cryptocurrency.   D.C. had no knowledge on how to invest in cryptocurrency, and therefore had to rely on what he was being told and instructed by SUSPECT #3.  In April and May of 2022, D.C. was convinced by SUSPECT #3 to cash out his 401k valued at $130,000, to take out a $35,000 bank loan, and cash out the rest of his savings

account and invest it all into cryptocurrency. D.C. lost approximately $300,000 in the scam.

28. SUSPECT #3 directed D.C. to websites https://www.cbot.com and https://www.comexant.com and instructed D.C. step-by-step on how to transfer his money into cryptocurrency and eventually into a cryptocurrency wallet address controlled by cbot.com. When D.C. attempted to withdraw his funds from the two websites, he was told he was unable to complete the withdrawal without first paying a tax on his earnings. D.C. made the following deposits at the direction of SUSPECT #3:

| Date Wire Sent to Exchange | Dollar Amount of Wire Sent to Exchange | Name of Bank/Institution Wire Originated | Name of Exchange Wire Deposited Into |
|---|---|---|---|
| April 29, 2022 | $ 49,990.00 | Chase Bank | Coinbase |
| May 10, 2022 | $200,080.00 | Chase Bank | Coinbase |

29. On October 3, 2022, the FBI TRA interviewed D.M. via, telephone, as D.M. currently resides in Roswell, Georgia. D.M. was referred to an investment opportunity by his friend who had a contact (SUSPECT #4) that was an "expert" in cryptocurrency trading and could predict future trends by analyzing the current market trades. D.M. communicated with SUSPECT #4 via WhatsApp and was instructed to download an app called Phemex and Coinbase. D.M. did not know anything about cryptocurrency trading and relied entirely upon what

SUSPECT #4 was telling and instructing him to do. Because D.M. did not know

much about trading, he initially only invested $10,000. Soon after this deposit,

D.M. made a profit on his trades and was even able to withdraw $6,500 of his

funds and transfer them back into his Coinbase account. After the withdrawal,

D.M. made two more deposits that totaled approximately $45,000. D.M. was

instructed by SUSPECT #4 to make all his cryptocurrency deposits into specific

wallet addresses. D.M. felt "forced" into making more investments and was

told "the more you invest the more you are able to trade". D.M. decided he

was done with trading and tried to withdraw his funds from the website. When

D.M. attempted to withdraw his funds, he was told he was not eligible because

he did not trade enough, and despite making more trades, he was still unable

to withdraw his funds. D.M.'s friend who introduced him to SUSPECT #4, was

also a victim to this scam, but not listed in this affidavit. D.M. made the

following deposits:

| Date Wire Sent to Exchange | Dollar Amount of Wire Sent to Exchange | Name of Bank/Institution Wire Originated | Name of Exchange Wire Deposited Into |
|---|---|---|---|
| April 20, 2022 | $ 9,990.00 | USAA Federal Savings Bank | Coinbase |
| April 28, 2022 | $ 39,990.00 | USAA Federal Savings Bank | Coinbase |

30. On September 08, 2022, the FBI TRA interviewed B.F. via telephone as B.F.

currently resides in San Clemente, California. B.F. was introduced to an Asian

woman who went by the name of "Ann" (SUSPECT #5), by his uncle who met SUSPECT #5 over the social media platform, LinkedIn.  B.F. communicated with SUSPECT #5 via WhatsApp.  SUSPECT #5 told B.F., his uncle, and his father, who are all victims of this scam, that she had an uncle by the name of "Yi Chen Zhang", who was able to buy blockchain data to analyze and use that data to help predict future trends in the market.  B.F., his father, and uncle all were directed by SUSPECT #5 to websites Phenexibn.com and Minedigital.com and he was told to makes deposits to Coinbase and then into wallets given to them by SUSPECT #5.  B.F. made profits from his trades under the guidance of SUSPECT #5 and her uncle. When B.F. tried to withdraw his funds, he was given many excuses such as he needed to pay a tax and he did not meet the eligibility because the number of his trades were too low.  B.F. invested and lost approximately $300,000 of his savings.  B.F. made the following deposits:

| Date Wire Sent to Exchange | Dollar Amount of Wire Sent to Exchange | Name of Bank/Institution Wire Originated | Name of Exchange Wire Deposited Into |
|---|---|---|---|
| April 21, 2022 | $   9,990.00 | USAA Federal Savings Bank | Coinbase |
| April 28, 2022 | $  45,000.00 | USAA Federal Savings Bank | Coinbase |
| May 24, 2022 | $  20,000.00 | USAA Federal Savings Bank | Coinbase |
| May 27, 2022 | $180,000.00 | USAA Federal Savings Bank | Coinbase |
| August 12, 2022 | $  25,990.00 | PNC Bank | Coinbase |

31. On September 27, 2022, the FBI TRA interviewed J.P., who is an elderly victim of 74 years old, via telephone as he currently resides in Claremont, California. J.P. was approached by a woman who went by the name of "Sophia" (SUSPECT #6) on WhatsApp.  SUSPECT #6 introduced J.P. to cryptocurrency trading and directed him to the trading website https://www.cbot.com and https://www.webull.com. J.P. was instructed to download the applications Bitstamp, Crypto, and Coinbase, along with creating an account with cbot.com and webull.com.  J.P. was shown how and when to make his trades on the websites.  After J.P. made many trades and earned a big profit, he tried to make a withdrawal, but was told he was unable until he paid a tax on his earnings. The website also stated he needed to boost his account credit score in order to make any withdrawals, and in order to do that he needed to invest more money. J.P. made the following deposits:

| Date Wire Sent to Exchange | Dollar Amount of Wire Sent to Exchange | Name of Bank/Institution Wire Originated | Name of Exchange Wire Deposited Into |
|---|---|---|---|
| April 27, 2022 | $    149,990.00 | Comerica Bank | Coinbase |
| May 3, 2022 | $    264,990.00 | Comerica Bank | Coinbase |
| May 4, 2022 | $    164,990.00 | Comerica Bank | Coinbase |

32. A portion of P.J.'s, D.C.'s, D.M.'s, and B.F.'s stolen funds went into deposit address 0xc4a3...0a16 for the Target Binance Account according to blockchain analysis as shown below.

   a. Both P.J.'s and D.C.'s had funds in BTC that were transferred to 33Y61L...eMSz:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 1227af9143e40f3fca6d43c3344f51ea56b28e4efd56a04b6cdc6ce5a5e10ca6 | 04/27/2022 10:01:00 PM | 3.79729165 | 33Y61L...eMSz | P.J. |
| b522c3730cd217cc44804ae65c1a3a374dd9054ce3ffdae53787d081009819d9 | 04/27/2022 11:18:00 PM | (3.79729) | 3JMjHD...k8UG | |
| a2e07423bfeebe7fd94d040fb32f4d608eddb55cf6e8fe23216ba149f501b23e | 05/02/2022 8:56:00 PM | 0.68255788 | 33Y61L...eMSz | P.J. |
| d215923f7c6e1325cb7f485e136dba66009959e240f86be6d0d8c0dea96b4df4 | 05/02/2022 8:56:00 PM | 1.26255379 | 33Y61L...eMSz | D.C |
| 933b1bb82de3752b8a284cf3599294fa3adacca010d8175ab5aa620df284d5a2 | 05/02/2022 9:21:00 PM | (1.94509295) | 3JMjHD...k8UG | |
| faf35650ae3a4095a67804b3a46c3d3cf92f6a8d344f97d486cbd15d068c0a4b | 05/03/2022 7:26:00 PM | 6.87905472 | 33Y61L...eMSz | P.J. |
| b633163d32e98d1595c4239374d60dc96afce888696c63c0b246fd9581dcb6f6 | 05/03/2022 7:32:00 PM | (6.87904632) | 3JMjHD...k8UG | |
| c1d0ed0b4d998566b4a525f928e660876e65b03afdc44dacc4dd8225689498c6 | 05/04/2022 8:34:00 PM | 3.94840367 | 33Y61L...eMSz | P.J. |
| cf78ffd27385467d25f7a981a00136a1afd5a1e1e5fbb21f702056cd2ab51be3 | 05/05/2022 7:52:00 AM | (3.94838967) | 3JMjHD...k8UG | |

   b. P.J.'s and D.C.'s funds were then swapped for WBTC using imToken as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0xc3c972f4fdfd30b8a6bb3baa78e17b187a4da5ad08793f7d629b7c24a96c4a13 | 04/27/2022 11:38:59 PM | 3.78894127 | 0xd39a...09bB | P.J. |
| 0x28858828b828fac1c65812adbe491fdfe2c11a2afd859444f669103ff128784b | 04/27/2022 11:40:55 PM | (3.7889) | 0x8D90...13c6 | |
| 0xfefb680e2f82cc60f9132163d01e91d1b36d095d53db97699222b5a912f7e4a6 | 05/02/2022 10:05:29 PM | 1.93868114 | 0xd39a...09bB | P.J. & D.C |
| 0xe1edef6398d6fe3d4d19c776c67611e222d9f480775ed5ff4dfbf71ee42c77e0 | 05/02/2022 10:15:33 PM | (1.9386) | 0x8D90...13c6 | |
| 0x6d1a810c531db2eac0cc7826cd081d57b38576f13987413bd02ff6968e39ef8a | 05/03/2022 8:01:27 PM | 6.86392204 | 0xd39a...09bB | P.J. |
| 0x64cfed7145d6945279539f78bc8e16be205542b79ef6e2e9ac287973958eb9af | 05/03/2022 8:06:02 PM | (6.8639) | 0x8D90...13c6 | |
| 0x75e32fd48236c4d48757fdde4fab424b013058f6cf07641933a86b106c800ed4 | 05/05/2022 8:22:19 AM | 3.93970873 | 0xd39a...09bB | P.J. |
| 0x8f062c0a350c432e3dd708ed79a72b018f13f0a65597227eff021dc83da5234b | 05/05/2022 1:09:47 PM | (4.796) | 0x4a14...650d | |

c.  P.J.'s and D.C.'s funds were then swapped for USDT by using Tokenlon

as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x28858828b828fac1c65812adbe491fdfe2c11a2afd859444f669103ff128784b | 04/27/2022 11:40:55 PM | 147,998.581706 | 0xd39a...09bB | P.J. |
| 0x9a55494038f56a4a42a9f51aa24725bf5897a0646824c08913e7e501217d1ea6 | 04/28/2022 12:02:33 AM | (147,998.581706) | 0x034B...AEeF | |
| 0xe1edef6398d6fe3d4d19c776c67611e222d9f480775ed5ff4dfbf71ee42c77e0 | 05/02/2022 10:15:33 PM | 75,066.464264 | 0xd39a...09bB | P.J. & D.C |
| 0xc5d24b74bfa3056b368c9d3699595e27de37d654ae3494cb0a85f5ab34224816 | 05/03/2022 12:12:40 AM | (75,066.4642) | 0x034B...AEeF | |
| 0x64cfed7145d6945279539f78bc8e16be205542b79ef6e2e9ac287973958eb9af | 05/03/2022 8:06:02 PM | 257,602.067108 | 0xd39a...09bB | P.J. |
| 0xd53b22377939c2df593c0715386c3912639fa15d943b89f4a561a83726a5345c | 05/03/2022 8:12:45 PM | (257,602.0671) | 0x034B...AEeF | |
| 0x8f062c0a350c432e3dd708ed79a72b018f13f0a65597227eff021dc83da5234b | 05/05/2022 1:09:47 PM | 188,468.304097 | 0xd39a...09bB | P.J. |
| 0xcc461c78c83d50e75eb56a90714ec1e61e9d562657d6a29316051c282ae6a7a4 | 05/05/2022 3:29:30 PM | (188,468.3039) | 0x034B...AEeF | |

d.  Both D.M. and B.F. had funds in BTC that were transferred to

39Es4h...yZyg):

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 90a17411d2c03eaf928c2e66440c00ae920581040f779024db5baf46ffa1013c | 04/28/2022 8:30:32 PM | 0.97839784 | 39Es4h...yZyg | D.M. |
| 411e0f9345a14a8a06fa17cede35dda7092e3f8870267b1faf9de0e5cffe28bd | 04/28/2022 8:42:26 PM | 1.12146669 | 39Es4h...yZyg | B.F. |
| 811bbc3bd27a84c6ac4f20ad39db2199885330eec10eb74a4b9a7665f32c8a02 | 04/28/2022 11:00:21 PM | (2.09984789) | 3JMjHD...k8UG | |

e. D.M.'s and B.F.'s funds were then swapped for WBTC using imToken as

shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0xb1fc9a36bb0d31265de0967ef3c59a5060 e417a3d0217f678a2eed2f04829fed | 04/28/2022 11:47:30 PM | 2.09481202 | 0xe86d...5d0f | D.M. & B.F. |
| 0x846b2b3a3bd62d4c375d9dce6101d0eba b74e1faacc825705d766cc6bd52fd5b | 04/29/2022 12:38:26 AM | (2.0948) | 0x4a14...650d | |

f. D.M.'s and B.F.'s funds were then swapped for USDT by using Tokenlon

as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x846b2b3a3bd62d4c375d9dce6101d0eba b74e1faacc825705d766cc6bd52fd5b | 04/29/2022 12:38:26 AM | 80,989.17 | 0xe86d...5d0f | D.M. & B.F. |
| 0xf76aafcafb9e9532335b2809c02bca2f97a 68c73bed26c79b8f78fdd85d92f7f | 04/29/2022 12:57:02 AM | (80,989.17) | 0x034B...AEeF | |

g. Wallet address 0x034B...AEeF is the intermediary wallet address where

the funds for all 4 victims above consolidated:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x9a55494038f56a4a42a9f51aa24725bf58 97a0646824c08913e7e501217d1ea6 | 04/28/2022 12:02:33 AM | 147,998.581706 | 0x034B...AEeF | P.J. |
| 0x5a56f2116032b70232e49b081cf7f0db5f4 692c1d36a12b0d94527ef845a4c7a | 04/28/2022 5:47:20 AM | (179,034.00) | 0x5E90...7aFD | |
| 0xf76aafcafb9e9532335b2809c02bca2f97a 68c73bed26c79b8f78fdd85d92f7f | 04/29/2022 12:57:02 AM | 80,989.172837 | 0x034B...AEeF | D.M. & B.F. |
| 0xa364712e585ac15b7d4e24b6a8f07239b bc08c94f729490ca1079c30acd55920 | 04/29/2022 6:15:21 AM | (100,744.00) | 0x5E90...7aFD | |
| 0xc5d24b74bfa3056b368c9d3699595e27d e37d654ae3494cb0a85f5ab34224816 | 05/03/2022 12:12:40 AM | 75,066.4642 | 0x034B...AEeF | P.J. & D.C |
| 0x94ff59c15575dc79ca9895b86390c0a643 6f6d294fd445eaa9b13c842b9c6bf6 | 05/03/2022 5:18:16 AM | (76,833.00) | 0x5E90...7aFD | |
| 0xd53b22377939c2df593c0715386c391263 9fa15d943b89f4a561a83726a5345c | 05/03/2022 8:12:45 PM | 257,602.0671 | 0x034B...AEeF | P.J. |
| 0xc048670f3c55ca4f99d7ee703a94741433 39cb5e0e133779757dedfbdc2a654f | 05/04/2022 6:03:08 AM | (287,910.00) | 0x5E90...7aFD | |
| 0xcc461c78c83d50e75eb56a90714ec1e61 e9d562657d6a29316051c282ae6a7a4 | 05/05/2022 3:29:30 PM | 188,468.3039 | 0x034B...AEeF | P.J. |
| 0x14957ee0676924e7359eac10d349f98c8 42fcc86087f29f3a1fc45808a1b5fda | 05/05/2022 3:59:10 PM | (222,618.00) | 0x29F9...0Cb9 | |

h. The victim's funds were then transferred to two wallet addresses, 0x5E90...7aFD and 0x29F9...0Cb9 before being consolidated again to deposit address 0xc4a3...0a16 for the Target Binance Account:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x5a56f2116032b70232e49b081cf7f0db5f4 692c1d36a12b0d94527ef845a4c7a | 04/28/2022 5:47:20 AM | 179,034.00 | 0x5E90...7aFD | P.J. |
| 0xa364712e585ac15b7d4e24b6a8f07239b bc08c94f729490ca1079c30acd55920 | 04/29/2022 6:15:21 AM | 100,744.00 | 0x5E90...7aFD | D.M. & B.F. |
| 0x94ff59c15575dc79ca9895b86390c0a643 6f6d294fd445eaa9b13c842b9c6bf6 | 05/03/2022 5:18:16 AM | 76,833.00 | 0x5E90...7aFD | P.J. & D.C |
| 0xc048670f3c55ca4f99d7ee703a94741433 39cb5e0e133779757dedfbdc2a654f | 05/04/2022 6:03:08 AM | 287,910.00 | 0x5E90...7aFD | P.J. |
| 0x0ed43050f0144d1745cff47341457287ba a2183ad42dd754e61cc8030d81fa90 | 05/05/2022 4:11:43 PM | (731,531.00) | 0xc4A3...0A16 | |

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x14957ee0676924e7359eac10d349f98c8 42fcc86087f29f3a1fc45808a1b5fda | 05/05/2022 3:59:10 PM | 222,618.00 | 0x29F9...0Cb9 | P.J. |
| 0x582588774dee5bcf22b431c30e11c5edec 33a707ae313ffa9fa674eb699375ca | 05/05/2022 4:10:27 PM | (373,351.00) | 0xc4A3...0A16 | |

i. The total amount of victim's funds from P.J., D.C., D.M., and B.F. into deposit address 0xc4a3...0a16 for the Target Binance Account was 1,104,882 USDT, or approximately $1.1 million U.S. dollars.

33. Figures showing the entire flow of the portion of all 4 of these victims' stolen funds (P.J., D.C., D.M., and B.F.)  into deposit address 0xc4a3...0a16 for the Target Binance Account is below:





7 Victims' Stolen Funds Transferred to Target Binance Account Wallet Address
TPbxGy...d4CL

34. On August 17, 2022, the FBI TRA interviewed via telephone M.J. as she currently

resides in University City, Missouri.  In April of 2022, M.J. was approached by a

male using the name of "Allen Chen" (SUSPECT #7), about his interest in renting

a condo she had listed.  They started to communicate using the communication

application called Line.  SUSPECT #7 represented himself as a family man who

worked for Citibank in New York as a financial trader/analyst.  SUSPECT #7 told

M.J. he traded cryptocurrency and wanted to get her involved as he was very

successful at it and wanted to help M.J. for helping him with the condo.

SUSPECT #7 instructed M.J. on what applications to download such as BiKing

and Coinbase, how to download them, and how to work them and makes

trades using them.  M.J. was directed to https://www.BiKing.com and told to

create an account to make her trades.  M.J. was also instructed to transfer her

savings to Coinbase and eventually into the wallets provided to her by SUSPECT

#7.  M.J. was new to trading cryptocurrency and had to rely on SUSPECT #7's

help and direction.  After a few trades, M.J. started to make profits.  SUSPECT

#7 told M.J. the more money in her account the better the return.  After seeing

these profits and at the urging of SUSPECT #7, M.J. started to invest more of

her savings into the scam and even got her family to invest as well.  M.J.

borrowed money from her family to invest more into the scam.  In

approximately 80 days, M.J. invested and lost approximately $965,000 of money she had in her savings to include her stocks and bonds, IRA accounts, and money she borrowed from family. When M.J. tried to withdraw her funds from the website, she was told she needed to pay a 20% tax. M.J. made the following deposits:

| Date Wire Sent to Exchange | Dollar Amount of Wire Sent to Exchange | Name of Bank/Institution Wire Originated | Name of Exchange Wire Deposited Into |
|---|---|---|---|
| May 4, 2022 | $ 28,000.00 | US Bank | Coinbase |
| May 6, 2022 | $320,000.00 | Royal Banks of Missouri | Coinbase |
| May 13, 2022 | $147,500.00 | Royal Banks of Missouri | Coinbase |
| May 13, 2022 | $ 20,000.00 | US Bank | Coinbase |
| May 16, 2022 | $ 50,000.00 | Royal Banks of Missouri | Coinbase |

35. On October 04, 2022, the FBI TRA interviewed via telephone A.A. as he currently resides in Milpitas, California. A.A. had been contacted using the communication application called Line. A.A. was contacted by a young wealthy Chinese female who went by the name of "Lisa" (SUSPECT #8). SUSPECT #8 told A.A. her family was in the exporting and trading business and that she could help him with cryptocurrency trading so he could also be wealthy. SUSPECT #8 instructed A.A. to visit the website https://www.cbotcen.com and start investing. SUSPECT #8 directed A.A. on how to set up an account with cbotcen.com and with Coinbase. At first, A.A. invested and transferred $7,000

to Coinbase and eventually into wallet addresses given to him by SUSPECT #8. After making a quick profit, and after SUSPECT #8 told A.A. the profits would be much higher if he invested $200,000, A.A. sold his stock and bonds and invested $200,000. After the transfer, A.A. saw higher gains from his investments. With the pressure from SUSPECT #8, A.A. sold more of his stocks and bonds and invested another $250,000. A.A. was able to make a small withdraw of $500 from his cbotcen.com account. After the withdrawal, A.A. sold his remaining stocks and bonds and invested another $70,000. After making more profits from his trades, A.A. attempted to withdraw $750,000 from his account but was unable due to the website stating he needed to complete advanced verification. A.A. uploaded a copy of his driver's license to the website. After weeks of verifying, A.A. was told his account credit score was down from 100 to 80 and it needed to be brought up for him to make any withdrawals. A.A. was advised he needed to pay $10,000 per point to bring his score back up to 100, which would cost him another $200,000. SUSPECT #8 told A.A. to quit his job so he could collect his 401k to pay the fee. A.A. invested and lost approximately $520,000 of his savings.

36. On September 15, 2022, the FBI Los Angeles Division interviewed F.J. via phone as she currently resides in Arcadia, California. F.J. first met "Ken Tang" (SUSPECT #9), on February 27, 2022, on the WeChat application, asking for a

piano teacher in the Los Angeles area and presenting himself working in the metaverse and cryptocurrency. SUSPECT #9 introduced F.J. to cryptocurrency trading and directed her to BXMEX and Toptank and promised her investments in the crypto market with guaranteed 20-30% returns. SUSPECT #9 instructed F.J. step-by-step on how to download and use these applications. The Toptank and BXMEX applications were not found on the Apple application store. SUSPECT #9 sent her a link via WeChat to open and download the apps directly to her phone. F.J. also downloaded Coinbase and Crypto as per SUSPECT #9's instructions. SUSPECT #9 also told F.J. how and when to make her trades once the software and applications were installed. The website F.J. was directed to make her trades was https://www.toptankep.com. F.J. attempted to withdraw her funds from toptankep.com and was told she needed to pay fees and taxes on those funds and when SUSPECT #9 was confronted, he cut off all communication with F.J. and she never heard back from him or from toptankep.com's customer service. F.J. was given the wallet address to transfer her cryptocurrency into and she made several deposits that equaled approximately $405,200, which she eventually lost in the scam.

37. Through blockchain tracing and obtaining records from Coinbase, the FBI has identified four more victims who have submitted complaints and filed reports through the FBI's Internet Crime Complaint Center (IC3). The FBI TRA has

reviewed those IC3 reports filed by the following four victims and believe all their cases are similar to those victims that have already been interviewed.

38. On May 7, 2022, J.H., who is an elderly victim of 63 years old, from Sterling Heights, Michigan submitted a report to IC3 stating she lost $156,000 in an online investment scam. J.H. was approached via LinkedIn, WeCchat, and WhatsApp by a Chinese male who went by the name of "Andy Wang" (SUSPECT #10). SUSPECT #10 introduced her to cryptocurrency trading and directed her to the websites https://www.toptank.com and sinsab.com/5#/ to make her trades. J.H. invested a small amount of $5,000 to start and was instructed by SUSPECT #10 to download Coinbase and he showed her how to transfer her savings into Coinbase and eventually into cryptocurrency wallets given to her by SUSPECT #10. SUSPECT #10 showed her how to transfer her funds back to her Coinbase account after making profits. After J.H. was able to transfer money back into her Coinbase, she started to trade even more money. After investing $156,000 of her savings, J.H. tried to withdraw her funds and transfer her money and profits back to her Coinbase account but was told she needed to pass advanced verification which would require, one to thirty days of verification and then told her she needed to deposit another 30% into her account before any funds could be transferred.

39. On July 25, 2022, R.N., who is an elderly victim of 73 years old, from Littleton, Colorado submitted a report to IC3 and stating he lost approximately $2,000,000 of his savings in an online investment scam. R.N. reported he was approached by a friend of his girlfriend named "Anton Chen" (SUSPECT #11) about trading cryptocurrency. SUSPECT #11 stated he was part of a group that analyzes the blockchain and other macro-economic trends for cryptocurrency trading and the odds of gain were 90%. In April of 2022, SUSPECT #11 directed R.N. to the website https://www.Simexcen.com and coached him on how and when to make trades using this website. After R.N. made profits from his trades, he tried to withdraw his funds and, he was told he could only withdraw contents from his last trade and if the profit was greater than $500,000, he had to pay a 10% fee and taxes. R.N. was told he had to pay an additional $528,000 in taxes before he could make any withdrawals.

40. On June 30, 2022, R.T. from Tempe, Arizona submitted a report to IC3 stating he lost approximately $430,000 of his savings to an online investment scam. R.T. thought he was transferring his funds to a legitimate cryptocurrency trading platform and website called https://www.apexcryptobiz.com. When R.T. attempted to withdraw his funds and profits the website told him he owed a tax on his profits and was unable to withdraw any of his money.

41. On August 5, 2022, G.W. from Hayward, California submitted a report to IC3 stating he lost approximately $315,155.61 in an online investment scam.  G.W. was approached by someone named "Tan" (SUSPECT #12) on Skype who helped him set up an account with Antrush Group and helped him trade Bitcoin cryptocurrency.  Since April of 2022, G.W. invested approximately $315,000 from his savings to wallets controlled by Antrush Group.  When G.W. attempted to withdraw his funds and profits he was unable to login and was unable to withdraw any of his funds.   The website he was directed to was https://www.antrush.com and https://www.antrushfx.com.

42. A portion of M.J.'s, A.A.'s, F.J.'s, J.H.'s, R.N.'s, R.T.'s, and G.W.'s stolen funds went into deposit address TPbxGy...d4CL for the Target Binance Account according to blockchain analysis as shown below.

   a.  R.T. had funds in USDC that were transferred to 0x569b...e244:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0xd6f47d2f379a1f80ad234ca807ab16f49106 299c7093b27fc520a5fdb679b76c | 05/04/2022 11:06:49 PM | 119,000 | 0x569b...e244 | R.T. |
| 0x068276aa1daf908cffdd8ae5c9928023c8c9 e481829654e8c0a3bfec7e281bdc | 05/04/2022 11:23:51 PM | (119,000) | 0x308f...859c | |

   a.  The next hop with R.T.'s funds in USDC was:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x068276aa1daf908cffdd8ae5c9928023c8c9 e481829654e8c0a3bfec7e281bdc | 05/04/2022 11:23:51 PM | 119,000 | 0x308f...859c | R.T. |
| 0x43a28baf143ce47ad8693a91902f163a23c 3292caa838d62212e5f0e7b095535 | 05/04/2022 11:28:51 PM | (150,780) | 0x4a14...650d | |

b.  R.T.'s funds in USDC were then swapped for USDT by using Tokenlon in

wallet address 0x308f...859c as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x43a28baf143ce47ad8693a91902f163a23c3292caa838d62212e5f0e7b095535 | 05/04/2022 11:28:51 PM | 150,669.470937 | 0x308f...859c | R.T. |
| 0x24b7efa5f36d548d37cfb7c3e93eab354cb5b480e29a608278d513f2f501a926 | 05/04/2022 11:50:25 PM | (150,669.46) | 0xc0b1...1b2b | |

c.  M.J. had funds in USDC that were transferred to 0xf05b...44a7:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x886858df01a19ba5dad0d0fb012ccfba9bc567f0541502584ae98dafd38dc974 | 05/05/2022 3:23:34 AM | 27,971.457514 | 0xf05b...44a7 | M.J. |
| 0x6ea56909e72fb4c6ba807de68ebaeecbcceb8f282cf30135301b21308cddd661 | 05/05/2022 4:52:39 AM | (27,971.457514) | 0x0671...cc70 | |

d.  The next hop with M.J.'s funds in USDC was:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x6ea56909e72fb4c6ba807de68ebaeecbcceb8f282cf30135301b21308cddd661 | 05/05/2022 4:52:39 AM | 27,971.457514 | 0x0671...cc70 | M.J. |
| 0x6c8202582561b3b770f8f4bf962ad4dc60373f388c71cce5ec05fc6a9bd2b92b | 05/05/2022 4:57:08 AM | (27,971.4575) | 0xfD6C...B54F | |

e.  M.J.'s funds in USDC were then swapped for USDT by using Tokenlon in

wallet address 0x0671...cc70 as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x6c8202582561b3b770f8f4bf962ad4dc60373f388c71cce5ec05fc6a9bd2b92b | 05/05/2022 4:57:08 AM | 27,931.831742 | 0x0671...cc70 | M.J. |
| 0x539d41aa35069c0d395bd9275854b4261e7cda4f65a8c4c33a9e4f9a3600001d | 05/05/2022 5:03:11 AM | (27,931.831742) | 0xc0b1...1b2b | |

f.  G.W. had funds in ETH that were transferred to 0x53c8...441c:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x71b95c7d5bdab3754f1ad16022b203bce86ee44265b1cced39943ece3d25bc4b | 05/04/2022 8:40:01 PM | 34.96260661 | 0x53c8...441c | G.W. |
| 0x8b3639be63f11bf553854e4860faf246d8994c34de3a3ac078897ea12f2a921e | 05/04/2022 9:50:12 PM | (34.96187496) | 0x7535...fe97 | |

g.  The next hop with G.W.'s funds in ETH was:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x8b3639be63f11bf553854e4860faf246d899 4c34de3a3ac078897ea12f2a921e | 05/04/2022 9:50:12 PM | 34.96187496 | 0x7535...fe97 | G.W. |
| 0x14ccc93f9e8db39f2abb1cec973e9f3fdbf8ff 54844fead645bb640f1cfd1a25 | 05/04/2022 10:22:16 PM | (35.9) | 0x03f3...9659 | |

h.  G.W.'s funds in ETH were then swapped for USDT by using Tokenlon in

wallet address 0x7535...fe97 as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x14ccc93f9e8db39f2abb1cec973e9f3fdbf8ff 54844fead645bb640f1cfd1a25 | 05/04/2022 10:22:16 PM | 104,872.772201 | 0x7535...fe97 | G.W. |
| 0x0a9ed9fadd4b58e93d510be5671459ae21f 740198ccd71c5ab123d744ac0ed47 | 05/05/2022 3:13:48 PM | (104,872.772201) | 0xc0b1...1b2b | |

i.  R.T. had funds in ETH that were transferred to 0xc9d6...1e6b:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0xf9b1a1bbae77b026b8c409c54cb4d5e72e7 e5aa5c2f7883968854aa9255265a5 | 05/05/2022 5:18:52 AM | 18.9301738 | 0xc9d6...1e6b | R.T. |
| 0xb715be657dda091e93a2b3065fef695fd40 8a0105320da8d8a8ef6776ce79eb8 | 05/05/2022 5:30:50 AM | (18.9285819) | 0xC9aE...FC5F | |

j.  The next hop with R.T.'s funds in ETH was:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0xb715be657dda091e93a2b3065fef695fd40 8a0105320da8d8a8ef6776ce79eb8 | 05/05/2022 5:30:50 AM | 18.9285819 | 0xC9aE...FC5F | R.T. |
| 0x0b523bfb2ce32f3d2787007306637871588 4ef2f0ababcf6e5705ce4696b5440 | 05/05/2022 5:41:53 AM | (18.88) | 0x03f3...9659 | |

k.  R.T.'s funds in ETH were then swapped for USDT by using Tokenlon in

wallet address 0xC9aE...FC5F as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x0b523bfb2ce32f3d2787007306637871588 4ef2f0ababcf6e5705ce4696b5440 | 05/05/2022 5:41:53 AM | 55,213.804778 | 0xC9aE...FC5F | R.T. |
| 0x4f28600fbfbf58b2e28fcf4441a9f3b25736f6 02bf556c0f8a9b6ab760c424be | 05/05/2022 8:11:35 AM | (55,213.804778) | 0xc0b1...1b2b | |

l.  J.H. had funds in USDC that were transferred to 0x4a79...d3d4:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x654e32692ba359ab5aba7bbd357c626a86410a4b3edf0ea5796a0854a7728376 | 05/04/2022 4:59:02 PM | 100,000 | 0x4a79...d3d4 | J.H. |
| 0x3733a80d495e203d67465e759ee7ef58aa56e6249b51f3ffd0d5a7050f847cab | 05/04/2022 6:06:24 PM | (100,000.005661) | 0xb0e3...e55a | |

m. F.J. had funds in USDC that were transferred to 0xb5a8...d623:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x0b53325082637e93df40077cc9f9692ba7465b207b3f6278161f8e558a0670d5 | 05/05/2022 2:43:27 AM | 50,981.086298 | 0xb5a8...d623 | F.J. |
| 0x575c6f20e1e74c2b0b330f05417799d48d1d5ea869de016a7d404556765d3d4a | 05/05/2022 3:02:26 AM | (50,981.086298) | 0xb0e3...e55a | |

n. J.H.'s and F.J.'s funds in USDC were consolidated in wallet address

0xb0e3...e55a:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x3733a80d495e203d67465e759ee7ef58aa56e6249b51f3ffd0d5a7050f847cab | 05/04/2022 6:06:24 PM | 100,000.005661 | 0xb0e3...e55a | J.H. |
| 0x1351f77ec77d23e064cc77fcabca36f76814409d2ee86807d3d060f0d2f96bcd | 05/04/2022 6:24:14 PM | (100,000.0056) | 0x4a14...650d | |
| 0x575c6f20e1e74c2b0b330f05417799d48d1d5ea869de016a7d404556765d3d4a | 05/05/2022 3:02:26 AM | 50,981.086298 | 0xb0e3...e55a | F.J. |
| 0x17700991145a840737b54a354032bea911986abfdaab94208a0399f081332cc5 | 05/05/2022 3:13:00 AM | (50,981.0863) | 0x4a14...650d | |

o. J.H.'s and F.J.'s funds in USDC were then swapped for USDT by using

Tokenlon in wallet address 0xb0e3...e55a as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x1351f77ec77d23e064cc77fcabca36f76814409d2ee86807d3d060f0d2f96bcd | 05/04/2022 6:24:14 PM | 99,916.590485 | 0xb0e3...e55a | J.H. |
| 0x60ed3e1f74d7238087595d999664315ec3f6d586e299b6dab4756a75595b3684 | 05/04/2022 6:52:17 PM | (149,044.552439) | 0xc0b1...1b2b | |
| 0x17700991145a840737b54a354032bea911986abfdaab94208a0399f081332cc5 | 05/05/2022 3:13:00 AM | 50,826.497673 | 0xb0e3...e55a | F.J. |
| 0xec1d4fe1eda97a0f63e3dcc25b23a2af23dd824d6247b885ca6bdbfc5389fecb | 05/05/2022 3:20:52 AM | (50,826.497673) | 0xc0b1...1b2b | |

p. A.A. had funds in USDC that were transferred to 0x1c31...008f:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x520abd052e9e9a405ca2cf400fc80b96634 430fc1e152c1f525536fce1561de7 | 05/04/2022 3:47:20 PM | 70,000 | 0x1c31...008f | A.A |
| 0x369f9271e4cd594660cc65da040fad2ec8a 2a2a3e2a1f654652f2a85fd267cb2 | 05/04/2022 4:04:01 PM | (70,000) | 0x63Fa...d221 | |

q.  The next hop with A.A.'s funds in USDC was:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0x369f9271e4cd594660cc65da040fad2ec8a 2a2a3e2a1f654652f2a85fd267cb2 | 05/04/2022 4:04:01 PM | 70,000 | 0x63Fa...d221 | A.A |
| 0xaf48e557e3b7a81c4394902d381f3aac37b 0651dd86449ecf31141babe3a7b35 | 05/04/2022 4:06:51 PM | (70,000) | 0x4a14...650d | |

r.  A.A.'s funds in USDC were then swapped for USDT by using Tokenlon in

wallet address 0x63Fa...d221 as shown below:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0xaf48e557e3b7a81c4394902d381f3aac37b 0651dd86449ecf31141babe3a7b35 | 05/04/2022 4:06:51 PM | 69,857.36769 | 0x63Fa...d221 | A.A |
| 0xaec72c8423083548b45834a710676ab378 c6cb46bb6fc04d90ff91fc1767937f | 05/04/2022 4:14:51 PM | (69,857.36769) | 0xc0b1...1b2b | |

s.  Wallet address 0xc0b1...1b2b is the intermediary wallet address where

the funds for all 7 victims above were consolidated and then were

transferred to the two Malaysian Intermediary Accounts:

| Transaction Hash | Timestamp | Amount | Wallet Address | Victim |
|---|---|---|---|---|
| 0xaec72c8423083548b45834a710676ab378c6cb46bb6fc04d90ff91fc1767937f | 05/04/2022 4:14:51 PM | 69,857.36769 | 0xc0b1...1b2b | A.A |
| 0x60ed3e1f74d7238087595d999664315ec3f6d586e299b6dab4756a75595b3684 | 05/04/2022 6:52:17 PM | 149,044.552439 | 0xc0b1...1b2b | J.H. |
| 0x24b7efa5f36d548d37cfb7c3e93eab354cb5b480e29a608278d513f2f501a926 | 05/04/2022 11:50:25 PM | 150,669.46 | 0xc0b1...1b2b | R.N. |
| 0xec1d4fe1eda97a0f63e3dcc25b23a2af23dd824d6247b885ca6bdbfc5389fecb | 05/05/2022 3:20:52 AM | 50,826.497673 | 0xc0b1...1b2b | F.J. |
| 0x539d41aa35069c0d395bd9275854b4261e7cda4f65a8c4c33a9e4f9a3600001d | 05/05/2022 5:03:11 AM | 27,931.831742 | 0xc0b1...1b2b | M.J. |
| 0x2f80da40d49cbc79a45cf0d9258cc29c5da7480b7531a4f27d1ebe01db851d46 | 05/05/2022 6:59:36 AM | (200,500) | 0x949A...207e | |
| 0xf733592627ed67aa2854d2d04994c1f1ebe32f3ae55395fbea9c4eeeeb8bd0a4 | 05/05/2022 7:03:08 AM | (200,435) | 0xCE11...91C8 | |
| 0x4f28600fbfbf58b2e28fcf4441a9f3b25736f602bf556c0f8a9b6ab760c424be | 05/05/2022 8:11:35 AM | 55,213.804778 | 0xc0b1...1b2b | R.T. |
| 0x0a9ed9fadd4b58e93d510be5671459ae21f740198cc71c5ab123d744ac0ed47 | 05/05/2022 3:13:48 PM | 104,872.772201 | 0xc0b1...1b2b | G.W. |
| 0x30563c41ad29f7438e276f64d01428630c1577d2d2256ff5c49b985479670194 | 05/05/2022 4:00:56 PM | (174,427) | 0xCE11...91C8 | |

43. As shown previously, the Withdrawal History report for the two Malaysian Intermediary Accounts revealed that both Binance accounts withdrew funds to an external address TBgsF7...5cgy. The funds in TBgsF7...5cgy were then transferred to deposit address TPbxGy...d4CL for the Target Binance Account. The total amount of victims' funds from M.J., A.A, F.J., J.H., R.N., R.T., and G.W. into deposit address TPbxGy...d4CL for the Target Binance Account was 558,133 USDT, or approximately $558,000 in U.S. dollars.

44. Figures showing the entire flow of the portion of all 7 of these victims' stolen funds (M.J., A.A., F.J., J.H., R.N., R.T., and G.W.) into deposit TPbxGy...d4CL for the Target Binance Account is below:



**CONTACT FROM PURPORTED OWNER OF TARGET BINANCE ACCOUNT**

45. On October 21, 2022, I received an email from HAIQIANG LU at 999lhq@gmail.com that read, "FBI agent Nathan Wood, hello, my case number is 2022R05663.  Please check for me when it can be solved."  According to records from Binance, HAIQIANG LU is the owner of the Target Binance Account.  I had previously provided the case number to Binance as part of the process of temporarily freezing the Target Binance Account.

46. On October 25, 2022, I received the identical email from the same email address.

47. As of October 26, 2022, I have not responded to either email.

**FORFEITURE AND SEIZURE AUTHORITY FOR COMMINGLED FUNDS**

48. As to civil forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), "any property, real or personal, involved in a transaction in violation of 18 U.S.C. §§ 1956 or 1957, or any property traceable to such property" is subject to forfeiture to the United States. Additionally, pursuant to 18 U.S.C. § 981(a)(1)(D)(v) "any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of . . . section 1343 (relating to wire fraud)" is subject to forfeiture to the United States. Property subject to civil forfeiture under 18 U.S.C. § 981(a)(1) may be seized pursuant to 18 U.S.C. § 981(b).

49. As to criminal forfeiture, pursuant to 18 U.S.C. § 982(a)(1), "the court, in imposing sentence on a person convicted of an offense in violation of 18 U.S.C. §§ 1956 or 1957 shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." As property subject to criminal forfeiture under 18 U.S.C. § 982(a)(1), the forfeitable assets may be seized pursuant to 21 U.S.C. § 853(f) (by 18 U.S.C. § 982(b)(1)).

50. With respect to seizure for criminal forfeiture, 21 U.S.C. § 853(f) provides that a court may issue a criminal seizure warrant when it "determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that a protective order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture." There is a substantial risk that the assets discussed in this affidavit will be withdrawn, moved, dissipated, or otherwise become unavailable for forfeiture unless immediate steps are taken to secure them at the time the requested searches are executed. As all forms of cryptocurrency, the assets discussed in this affidavit are inherently portable and fungible. Furthermore, many cryptocurrencies are subject to speculative valuations and volatile price swings. Even a so called "stablecoin" cryptocurrency pegged to fiat currency (such as Tether, which is pegged to the U.S. dollar) faces substantial questions

about the assets backing the cryptocurrency and whether the cryptocurrency would withstand, for example, a run on the cryptocurrency caused by a drop in investor confidence. Thus, even assuming the target of this investigation could be located and extradited for prosecution, there is a substantial possibility that the assets discussed in this affidavit would experience a significant devaluation before any orders of forfeiture could be imposed pursuant to conviction of the target. While Binance has temporarily frozen the funds in the Target Binance Account, once that freeze is lifted, the funds could be quickly dissipated. I therefore submit that a protective order under 21 U.S.C. § 853(e) would not be sufficient to assure that the assets will remain available for forfeiture.

51. To seize the property referenced in the cryptocurrency account in this case for criminal or civil forfeiture, the government must show that there is probable cause to believe that wire fraud or money laundering occurred, and that the account was involved in money laundering. 18 U.S.C. § 982(a)(1); *United States v. Huber*, 404 F.3d 1047, 1056-58 (8th Cir. 2005); *United States v. Warshak*, No. 1:06-CR-111, 2008 U.S. Dist. LEXIS 13284, *3-4 (S.D. Oh. Feb. 22, 2008).

52. I submit that there exists probable cause to believe that the Target Binance Account has been used to commit concealment money laundering. Based on my training and experience, I know individuals engaged in fraud sometimes move proceeds of criminal activity through multiple financial accounts,

sometimes at a rapid pace, and often with no discernable legitimate purpose. The blockchain analysis demonstrates this of the Target Binance Account: it shows the movement of the money from many different Victims, from multiple different scam website platforms, distributed through a series of intermediary wallet addresses, often with a rapid pace of movement between the wallet addresses; conversion of cryptocurrency to other types of cryptocurrency; and usage of multiple Binance accounts, with two of these Binance accounts (the Malaysian Intermediary Accounts) appearing to be controlled by the same individual. In addition, these transactions occurred without any apparent legitimate economic purpose, which implies the purpose of the transactions was to conceal the nature, source, location, ownership and control of the fraud proceeds.

53. While only approximately $1.6 million of the approximately $2.6 million currently in the Target Binance Account is directly traceable to victims of the scam, there is probable cause to believe that the remaining approximately $1 million is either (1) proceeds of the fraud that the government has not been able to trace to date, or (2) commingled funds involved in or used to facilitate the money laundering offenses. *See, e.g., United States v. Omidi*, 2021 WL 7629897, *8 (C.D. Cal. June 15, 2021) (Slip Copy) (endorsing government's theory of forfeiture of untainted but commingled funds "involved in the

placement, layering, and integration of the fraud proceeds," and observing that the Ninth Circuit had noted, in dicta, that "in a money laundering charge, the commingling of tainted money with clean money taints the entire account"). Accordingly, all of the proceeds in the Target Binance Account are subject to forfeiture.

**CONCLUSION**

54. Based upon the evidence gathered in this investigation and set out above, I submit that there is probable cause to believe that all assets stored in the Target Binance Account, held in the name of HAIQIANG LU, is property which constitutes or is derived from proceeds traceable to and involved in money laundering, and commingled with tainted funds, in violation of Title 18 U.S.C. §§ 1343 (Wire Fraud), 1349 (Conspiracy to Commit Wire Fraud), 1956(a)(1)(B)(i) (Money Laundering), and 1956(h) (Conspiracy to Commit Money Laundering). As such, the above-described property is subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f) and subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and (a)(2).

55. I swear, under penalty of perjury, that the foregoing is true and correct.


NATHAN WOOD   Digitally signed by NATHAN WOOD
Date: 2022.10.27 11:06:19 -07'00'
_____
Nathan Wood, Special Agent
Federal Bureau of Investigation


Subscribed and sworn to me via telephone this ____27th____ day of October 2022

_____
United States Magistrate Judge

EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**COURT CASE NUMBER: CV-23-00147 TUC MSA; NOTICE OF FORFEITURE**
**ACTION**

Pursuant to 18 U.S.C. § 981, the United States filed a verified Complaint for Forfeiture against the following property:

1,150,049.51316 Tether US Cryptocurrency seized from Haiqiang Lu Acct# 000 (23-FBI-001312) which was seized from Haiqiang Lu on January 06, 2023 at Binance, located in Phoenix, AZ

59,939.992 Ethereum Classic Cryptocurrency seized from Haiqiang Lu Acct# 000 (23-FBI-001318) which was seized from Haiqiang Lu on January 06, 2023 at Binance, located in Phoenix, AZ

Any person claiming a legal interest in the Defendant Property must file a verified Claim with the court within 60 days from the first day of publication (July 12, 2025) of this Notice on this official government internet web site and an Answer to the complaint or motion under Rule 12 of the Federal Rules of Civil Procedure within 21 days thereafter. 18 U.S.C. § 983(h)(1) permits a court to impose a civil fine on anyone asserting an interest in property which the court determines was frivolous.

The verified Claim and Answer must be filed with the Clerk of the Court, 405 West Congress Street, Suite 1500, Tucson, AZ 85701, and copies of each served upon Assistant United States Attorney Matthew Eltringham, 405 W. Congress Street, Suite 4800, Tucson, AZ 85701, or default and forfeiture will be ordered. *See*, 18 U.S.C. § 983(a)(4)(A) and Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

The government may also consider granting petitions for remission or mitigation, which pardon all or part of the property from the forfeiture. A petition must include a description of your interest in the property supported by documentation; include any facts you believe justify the return of the property; and be signed under oath, subject to the penalty of perjury, or meet the requirements of an unsworn statement under penalty of perjury. *See* 28 U.S.C. Section 1746. For the regulations pertaining to remission or mitigation of the forfeiture, see 28 C.F.R. Sections 9.1 - 9.9. The criteria for remission of the forfeiture are found at 28 C.F.R. Section 9.5(a). The criteria for mitigation of the forfeiture are found at 28 C.F.R. Section 9.5(b). The petition need not be made in any particular form and may be filed online or in writing. You should file a petition not later than 11:59 PM EST 30 days after the date of final publication of this notice. *See* 28 C.F.R. Section 9.3(a). The https://www.forfeiture.gov/FilingPetition.htm website provides access to a standard petition form that may be mailed and the link to file a petition online. If you cannot find the desired assets online, you must file your petition in writing by sending it to Assistant United States Attorney Matthew Eltringham, 405 W. Congress Street, Suite 4800, Tucson, AZ 85701. This website provides answers to frequently asked questions (FAQs) about filing a petition. You may file both a verified claim with the court and a petition for remission or mitigation.