TIMOTHY COUCHRAINE
United States Attorney
District of Arizona
MATTHEW G. ELTRINGHAM
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: Matthew.Eltringham@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>1,150,049.51316 TetherUS ("USDT"),<br>59,939.992 Etherum Classic ("ETC"),<br><br>Defendants. | 23-CV-00147-MSA<br><br>GOVERNMENT'S RESPONSE TO MOTION TO DISMISS AND RETURN PROPERTY<br><br>(Doc. 18.) |

The United States of America, by and through its undersigned attorneys, submits this Response to Hiagiang Lu's Motion to Dismiss and Return Property. (Doc. 18.) The Court should deny the Motion: the government properly served Mr. Lu within a reasonable time as required by law and the seized cryptocurrencies are properly subject to forfeiture.

**I.     Facts and Procedural History**

On October 27, 2022, a federal magistrate judge in the District of Arizona, authorized a search and seizure warrant for any and all funds and cryptocurrency in Mr. Lu's Binance account. (22-08946MB; *see also* Lu Exhibit 2.) The only cryptocurrency seized from Mr. Lu's account was 1,150,049.51316 USDT and 59,939.992 ETC (hereinafter "Defendant Currency"). (22-08946MB, Doc. 4 p. 6.)

On March 27, 2023, the government filed a Complaint for Forfeiture In Rem, under seal. (23-CV-00147, Doc. 8.) The Complaint was filed under seal as to not jeopardize an ongoing investigation. (Doc. 1.)

On June 12, 2025, the government filed a Motion to Unseal this case. (Doc. 14.) The Motion was granted, and the case was ordered unsealed on June 23, 2025. (Doc. 15.)

The government began sending Notice of Forfeiture Action on July 12, 2025. and published on the government website, www.forfeiture.gov. Noticing and publication is ongoing as the government continues to identify victims and update victim information related to this cryptocurrency. The current deadline for an individual to file a claim is September 9, 2025. However, this deadline may change as victim information is frequently updated and Notices of Forfeiture Action are sent.

On August 5, 2025, the law firm of Tiffany & Bosco, filed a Notice of Appearance for Mr. Lu. (Doc. 16.) On the same day, Mr. Lu filed his Claim. (Doc. 17.)

On August 6, 2025, the government sent, via certified mail, Notice of Forfeiture Action to Mr. Lu in care of his attorney at Tiffany & Bosco. The Notice of Forfeiture Action was received and signed on August 11, 2025. The U.S. Attorney's Office received the signed Domestic Return Receipt on August 13, 2025. See, Exhibit 1. The Notice of Forfeiture Action provided by the government to Mr. Lu included the Civil Forfeiture In Rem Complaint, and a copy of the arrest warrant. See, Exhibit 2.

On August 22, 2025, Mr. Lu filed his Motion to Dismiss. (Doc. 18.)

**II.   Law and Argument**

This case involves judicial forfeiture of cryptocurrency valued over $500,000. The noticing requirements pursuant to 18 U.S.C. § 983 and Rule G(4)[1] did not apply until the case was unsealed.

Mr. Lu's allegation regarding the government's failure to provide notice within a reasonable time results in a dismissal of the Complaint for Forfeiture In Rem is misplaced. His reliance on the cases cited in his Motion are also misplaced, as those cases involve administrative forfeiture and not judicial forfeiture. (Doc. 18, p. 5.) Additionally, the cases he cites related to his allegation the government "abandoned its investigation" are also not

---

[1] "Rule (G)" refers to the Federal Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G.

applicable in this situation. *United States v. Martinson*, 809 D. 2d 1364 (9th Cir. 1987) involves administrative forfeiture and *Mr. Lucky Messenger Service Inc. v. United States*, 587 F.2d 15 (7th Cir. 1978) was remanded for further inquiry regarding the government's delay.

The government will address Mr. Lu's allegations related to noticing before addressing his allegations of a violation of Due Process and the ability of the government to seize the cryptocurrency in this case.

### A. *Mr. Lu received actual notice and therefore cannot challenge his noticing.*

Mr. Lu's attorney received actual notice on August 11, 2025. *See* Exhibits 1 and 2. Therefore, Mr. Lu cannot seek relief from the forfeiture based on lack of notice and his motion should be denied.

Rule G(4)(b) provides the government "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant." Rule G(4)(b)(i). The rule further provides the notice "must be sent by means reasonably calculated to reach the potential claimant." Rule G(4)(b)(iii)(A). Notice may be sent either to the potential claimant himself or to an attorney "representing the claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case." Rule G(4)(b(iii)(B); *see, United States v. $22,050 in U. S. Currency*, 2008 WL 4093066 (M.D. Tenn. Aug. 26, 2008) (the Rule allows the government to send the notice to potential claimant or his attorney; it does not have to send notice to both).

A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice. Rule G(4)(B)(v). For this rule to apply, the claimant must receive actual notice of the forfeiture proceeding itself and not merely notice of the seizure of the property. S*ee, United States v. One 2011 Porsche Panamera*, 684 Fed. Appx. 501 (6th Cir. 2017) (claimant who had actual notice of the judicial forfeiture proceeding – as demonstrated by her having filed timely claim – cannot excuse late filing of an answer on the ground the government's notice

was inadequate); *United States v. One Piece . . .15010 S.W. 168th Street*, 2008, WL 659472, *2 (S.D. Fla. 2008) (Rule G(4)(b)(v) bars a person with actual knowledge of the forfeiture action from seeking relief from a default judgment on the ground that the government failed to publish notice in accordance with Rule G(4)(a)).

Additionally, the government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B).

Mr. Lu was aware of the seizure of the Defendant Currency from his Binance account sometime in October 2022. The Civil In Rem Complaint was filed in March 2023 and remained sealed until the government moved for its unsealing on June 12, 2025, which was granted on June 23, 2025. Shortly after the unsealing, the government began sending Notice of Forfeiture Action to all potential claimants and began its online publication. The government sent Notice of the Forfeiture Action proceedings to Mr. Lu's attorney on August 6, 2025. Mr. Lu's attorney received the Notice of Forfeiture Action, along with the Civil In Rem Forfeiture Complaint on August 11, 2025. Since the government provided actual notice to Mr. Lu, he is prohibited from seeking relief from the forfeiture based on the allegation the government failed to provide him notice. Accordingly, his Motion to Dismiss should be denied.

B. **The government provided notice to Mr. Lu within a reasonable time.**

**1) Execution of Process.**

Rule G(3)(c)(ii)(B) provides "the authorized person or organization must execute the warrant and any supplemental process on property in the United States as soon as practicable *unless* (emphasis added) the court orders a different time when the complaint is under seal, the action is stayed before the warrant and supplemental process are executed, or the court finds other good cause."

Here, the government proceeded cautiously as to not seriously jeopardize the ongoing investigation and requested the Court seal the Complaint for Forfeiture In Rem.

The government was aware it would have to disclose information about its ongoing investigation if the Complaint were unsealed and Notices of Forfeiture were sent to all potential claimants and victims. The Court agreed and granted the government's Motion to Seal the Complaint for Forfeiture In Rem. *United States v. Real Property . . . 4816 Chaffery Lane, 2010 WL 147211 (E.D. Ky. Jan. 8, 2010)* (Rule G(3)(c) contains an exception to the "as soon as practicable" requirement for cases where the forfeiture action is stayed or the complaint is filed under seal). *See also*, 18 U.S.C. § 983(a)(1)(D)(v) ("period for sending notice under this paragraph may be extended only if there is reason to believe that notice may have an adverse result, including otherwise *seriously jeopardizing an investigation* (emphasis added) or unduly delaying a trial").

### 2. Non-judicial proceedings.

Non-judicial proceedings under a civil forfeiture statute are governed by 18 U.S.C. §983(a)(1)(A). However, when the aggregate value of the seized property at issue is over $500,000, the seized property is not eligible for administrative forfeiture.[2] *Omidi v. United States*, 851 F.3d 859 (9th Cir. 2017) (because $100 million seized from claimant's bank account was not eligible for administrative forfeiture, the 60-day deadline in § 983(a)(1)(A) did not apply, and therefore neither did the sanction in § 983(a)(1)(F)); *Chaim v. United States*, 692 F. Supp.2d 461, 466 (D.N.J. 2010) (60-day deadline does not apply to seizure of bank account containing more than $500,000 because it was not eligible for administrative forfeiture); *DWB Holding Co. v. United States*, 593 F. Supp.2d 1271, 1272 (M.D.Fla. 2009) (the 60-day deadline in § 983(a)(1) applies only to non-judicial forfeiture proceedings; it does not apply to the seizure of $24.3 million from a bank account because the forfeiture could not be administrative under 19 U.S.C. § 1607); *United States v. $147,900 in U.S. Currency*, 2009 WL 903356, *4 (M.D.N.C. Mar. 31, 2009) (11-month delay between seizure of currency and commencement of civil judicial forfeiture action did not violate CAFRA because the deadlines in § 983(a) only apply to cases that begin as

---

[2] The terms "non-judicial forfeiture" and "administrative forfeiture" are used interchangeably as they essentially mean the same thing.

administrative forfeitures).

If the law does not permit the government to commence an administrative forfeiture proceeding, or if the seizing agency does not have authority to process and administrative forfeiture, there can be no "non-judicial forfeiture proceeding." Therefore, there can be no deadline for commencing one. See, *United States v. Real Property Located on Duane Mountain*, 2009 WL 5215903 E.D. Ky. Dec. 2009) (rejecting motion to dismiss forfeiture action against real property for failure to comply with the 60-day deadline without mentioning that real property is not eligible for administrative forfeiture). Additionally, the statute does not apply when there is no "non-judicial forfeiture proceeding" because the property was seized not for forfeiture, but for some non-forfeiture purpose, such as evidence in a criminal case. *See*, *Celata v. United States*, 344 Fed. Appx. 801, 802 (9th Cir. 2009) (denying Rule 41(g) motion for the return of seized firearms that the government did not commence forfeiture proceedings with the deadline in §§ 982(a) and 924(d) was irrelevant as those statutes apply only when property is seized for forfeiture and not when it is seized as evidence in a criminal investigation.

Since this case is not eligible for administrative forfeiture due to the value of the Defendant Currency, the 90-day requirement to file an in rem civil complaint does not apply. *See* 18 U.S.C. § 983(a)(3). To comply with section 983(a)(3) it is only necessary for the government to file the complaint within 90 days. Notice of the action may be sent to potential claimants later. *See United States v. $136,165 in U.S. Currency*, 2013 WL 4026318 (E.D. Tex. July 16, 2013) (denying motion to dismiss where government complied with the section 983(a)(3) by filing the complaint within 90 days and sending notice later). A complaint is considered to have been timely filed if it is filed under seal within the 90-day deadline. Complaints may be filed under seal to prevent disclosures prior to the seizure of property, so as to ensure the availability of the property, or to avoid jeopardizing an ongoing criminal investigation. See, *United States v. 280 Cody Road South*, 2015 WL 631366, *1 (S.D. Ala. Feb. 13, 2015) (noting the court allowed government to file forfeiture complaint under seal and to delay posting and notice required

by § 985); *United States v. Real Property . . . 4816 Chaffey Lane*, 2010 WL 147211, *3-4 (E.D. Ky. Jan. 8, 2010) (holding that the government need not comply with the requirements for serving an arrest warrant in rem in Rule G(3) and for posting notice of the forfeiture on real property in 18 U.S.C. § 985 so long as a forfeiture complaint remains under seal). However, the Department of Justice Policy on the Deadline for Filing a Civil Forfeiture Action in Cases that do not Begin as Administrative Forfeiture Proceedings does apply. In pertinent part, it states the government should file a civil action for the forfeiture of the property within 150 days of the seizure of the property. In this case the defendant currency was seized on October 27, 2022. One hundred and fifty-one (151) days later, on March 27, 2023,[3] the government filed a Complaint for Forfeiture In Rem, under seal as to not jeopardize an ongoing investigation.[4]

On June 23, 2025, the Court ordered this case unsealed and the government began notification of the forfeiture on July 12, 2025, – nineteen (19) days after the unsealing. Mr. Lu was served, through his attorney, on August 6, 2025, – 44 days after the unsealing and well within any applicable noticing deadline. Therefore, Mr. Lu's Motion to Dismiss should be denied.

C. **Mr. Lu was not denied his Due Process rights.**

The government did not unreasonably delay in commencing forfeiture proceedings and therefore did not violate Mr. Lu's Constitutional Due Process rights.

Individuals must receive notice and an opportunity to be heard before the government deprives them of their property. *See, Fuentes v. Shevin*, 407 U.S. 67, 82 (1972). But this rule has several exceptions where temporary deprivation is concerned. In *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974) the Court provided three

---

[3] The 150-day DOJ policy deadline expired on Sunday, March 26, 2023. Pursuant to Fed. R. Civ. Pro. Rule 6(a)(1)(C) if the filing deadline falls on a weekend or holiday the deadline will be extended to the next business day.

[4] *United States v. Scarfo*, 41 F.4th 136, 221 n.104 (3rd Cir. 2022) (Government's failure to follow its policy on commencing a forfeiture action against property not eligible for administrative forfeiture when requested to do so by the claimant does not entitle the claimant to relief).

justifications for the seizure of property without notice.  One, the seizure allowed the court to assert in rem jurisdiction over the property thereby permitting judicial forfeiture to begin and fostering the public interest in preventing continued illicit use of the property an in enforcing criminal sanctions. *Id*. at 679.  Two, the seizure permitted the government to secure the property before the owner could frustrate the purpose of the forfeiture action by concealing the property, destroying it, or removing it to another jurisdiction. *Id*.  Last, the Court noted the seizure of property for forfeiture is subject to the protections of the Fourth Amendment therefore providing a guarantee a person would not be deprived of his property without a factual basis. *Id*. at 680.

Though the government may maintain possession of seized property pending the entry of a formal forfeiture order, title does not pass to the government until the forfeiture judgment is entered. *See, Langhord v. U.S. Dept. Of Treasury*, 832 F.3d 170 (3rd Cir. 2016) (en banc) (explaining the difference between seizure and forfeiture; seizure gives the government possession; forfeiture gives the government title).

The government must take certain affirmative steps to ensure the property owner is aware of the pendency of the forfeiture action and of the steps he must take to defend his interest.  The Supreme Court in *Mullane v. Central Hanover Bank & Trust Co*. set forth the standard for adequacy of the notice: The Due Process Clause of the Fifth Amendment requires notice be "reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314-15 (1950).  Since then, courts have held at a minimum the government must send notice by mail.  See, *Dusenbery v. United States*, 534 U.S. 161, 169 (2002).

In *United States v. $8,850 in U.S. Currency*, 461 U.S. 555 (1983), the Supreme Court adopted the "Barker-Wingo" four factor test[5] to determine whether delay in

---

[5] *Barker v. Wingo*, 407 U.S. 514, (1972) (developed a test to determine when government delay has abridged the right to a speedy trial; test involves a weighing of four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant).

commencing forfeiture proceedings constitute a violation of due process.[6] First is the length of the delay. Second is the reason for the delay. Third, what affirmative steps the claimant might have taken to secure the return of the property. Finally, the extent to which the claimant was prejudiced by the delay. *Id*. When applying this balancing test, the Ninth Circuit noted, "one factor by itself does not create a 'sufficient condition for finding unreasonable delay. Rather, these elements are guides in balancing the interests of the claimant and the government to assess whether the basic due process requirement of fairness has been satisfied in a particular case.'" *United States v. Approximately $1.67 Million (US) in Cash, Stock & Other Valuable Assets Held by or at 1) Total Aviation Ldt.*, 513 F.3d 991, 1001 (9th Cir. 2008); quoting *United States v. $8,850 in U.S. Currency,* 461 U.S. at 565.

Addressing the first factor, the length of delay, the government filed its Complaint for Forfeiture In Rem under seal 151 days after the seizure of the cryptocurrencies; commenced online publication 19 days after the Complaint for Forfeiture In Rem was unsealed and; began sending notices to all potential claimants, including Mr. Lu, and victims 44 days after the unsealing. This factor weighs in favor of the government. Alternatively, if the court views the length of delay to include the approximately 26 months the case was under seal, then this factor weighs in favor of Mr. Lu.

The second factor, reason for the delay, permits the government some time to investigate before it commences its forfeiture case. The Court noted, "both the government and claimant have an interest in a rule that allows the government some time to investigate the situation in order to determine whether the facts entitle the government to forfeiture so that, if not, the government may return the money without formal proceedings." *United States v. $8,850 in U.S. Currency*, 461 U.S. at 565. Here, the time the complaint was under seal the government continued to investigate and trace the fraudulent transfer of funds. The government only seized cryptocurrency which it established probable cause to believe was

---

[6] When deciding the case, the Court held the delay between the time defendant property was seized and the commencement of the civil forfeiture action did not violate the claimant's Due Process Rights under the Fifth Amendment.

derived from money laundering and wire fraud – the "pig butchering" scam. This factor weighs in favor of the government.

The third factor, affirmative steps made by the claimant to secure the return of his property, also weighs in favor of the government. Mr. Lu did nothing to prompt more rapid action from the government, such as filing motions in court demanding the return of his property. *See Id*. at 568-69. The two email inquiries made by the claimant were insufficient affirmative steps to warrant more rapid action by the government.

The fourth factor, the extent to which the claimant was prejudiced. Mr. Lu has failed to show he was prejudiced by the seizure of the Defendant Currency or the case remaining under seal. The government was unable to identify any of the criminal actors involved in the fraudulent scheme which resulted in the Defendant Currency in Mr. Lu's Binance account. Mr. Lu has failed to show, nor is there reason to believe, he was prejudiced by the seizure of the defendant currency. His conclusory claims that, "because of the delay, because if he truly purchased the cryptocurrencies from criminals, those criminal have long since disappeared and any attempts to track down the criminals or investigate would be futile" are conjecture and insufficient to establish prejudice. *See United States v. Scarfo*, 41 F.4th 136, 222–23 (3d Cir. 2022), *citing United States v. Childs*, 415 F.2d 535, 539 (3d Cir. 1969) (finding no "prejudicial delay whatsoever" from deceased and unavailable witnesses because defendant did not show how their testimony would have been material to his defense). Mr. Lu is under no obligation to track down the criminals to prove his innocent ownership.

A balancing of the four factors shows the government did not unreasonably delay in commencing forfeiture proceedings, and the claimant's Motion to Dismiss should be denied.

**D. *The seized cryptocurrencies are subject to forfeiture.***

The seized cryptocurrencies are subject to forfeiture because they are the corpus of the criminal acts of money laundering and wire fraud. The standard for seizing property for forfeiture is probable cause. *See, United States v. Melrose East Subdivision*, 357 F.3d

493, 504 (5th Cir. 2004) (the government's burden of proof at trial is a preponderance of the evidence, but it may size property pre-trial based only on probable cause) (citing 18 U.S.C. §§ 981(B)(2) and 985d)).

Establishing property is subject to forfeiture under the applicable forfeiture statue has two parts: (1) there must be probable cause to believe a crime giving rise to forfeiture occurred, and (2) probable cause to believe the property has the requisite connection to that crime. *Kaley v. United States*, 571 U.S. 320, 323-24 (2014) ("probable cause …is not a high bar: it requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act").

If the theory is the property was involved in money laundering, as in this case, the government must establish probable cause to believe not only a money laundering offense occurred, but also the property was "involved in" that offense within the meaning of the money laundering statutes." *See*, 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

Every money laundering offense committed in violation of section 1956(a)(1) necessarily involves at least some property that constitutes the proceeds of a specified unlawful activity (SUA). Accordingly, when the court orders the forfeiture of the "property involved" in the money laundering offense, the court will be ordering the forfeiture of the SUA proceeds which were laundered. *See, United States v. Huber*, 404 F.3d 1047, 1057 (8th Cir. 2005) (the fraud proceeds obtained by third parties as part of the scheme, and then transferred to defendant as part of the money laundering offense, were forfeitable as part of the corpus of the offense); *In re 650 Fifth Ave. and Related Props*., 777 F. Supp. 2d 529, 570 (S.D.N.Y. 2011) ("property 'involved in' or 'traceable to' money laundering includes the funds laundered").

No complaint may be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property. 18 U.S.C. § 983(a)(3)(D).

Here, the government established probable cause the Defendant Currency was the ill-gotten fruits of a fraudulent scheme and money laundering venture. Initially, the

probable cause to seize the defendant currency is established in the civil and criminal search and seizure warrant executed on October 23, 2022. The Complaint for Forfeiture In Rem, and accompanying affidavit, established the requisite evidence to prove the Defendant Currency was involved in money laundering and wire fraud. Currently, all the Defendant Currency is traced to innocent victims in the United States of this wire fraud and money laundering criminal enterprise. While the government was unable to adequately establish the identity of the fraudsters to support a criminal indictment, the government was able to trace the Defendant Currency to the fraudulent scheme. Therefore, the claimant's Motion to Dismiss should be denied.

### E. *Mr Lu has not shown he is an innocent owner.*

Mr. Lu's claim he is an innocent owner is an affirmative defense and not a basis to dismiss the complaint. *See* Rule G(9). The innocent owner defense is an affirmative defense on which the claimant bears the burden by a preponderance of the evidence. 18 U.S.C. § 983(d)(1) ("the claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence"), s*ee also, United States v. Ferro*, 681 F.3d 1105, 1109 (9th Cir. 2012) (to prevail on the innocent owner defense, the claimant must prove by a preponderance of the evidence that she was an innocent owner).

An innocent owner is a claimant who "did not know of the conduct giving rise to forfeiture; or upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A). Claimants have the burden of proving they are innocent owners "by a preponderance of the evidence." § 983(d)(1). To qualify as an innocent owner, a claimant must show that he is an "owner" as defined in § 983(d)(6), which is "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest" and excludes, as relevant, "a person with only a general unsecured interest in, or claim against, the property or estate of another." *See*, *United States, v. One Yellow Contender Vessel*, 2022 WL 797933 (D.P.R. 2022), *see also* § 983(d)(6)(A) and

(B).

A bona fide purchaser for value is determined by state or local law. *See*, *United States v. United States Currency $81,000.00*, 189 F.3d 28 at 33 (1st Cir. 1999) (indicating that state law determines ownership interests in a property); *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003). In Arizona, "a bona fide purchaser is one who purchases property for value and without actual or constructive notice of a prior unrecorded interest." *Delo v. GMAC Mortg., L.L.C.*, 232 Ariz. 133, 138 (App. 2013); s*ee, First Am. Title Co. v. Action Acquisitions, LLC,* 218 Ariz. 394, ¶ 12, (2008); *Davis v. Kleindienst,* 64 Ariz. 251, 258 (1946).

The defense of innocent ownership is not a basis to dismiss the complaint. Additionally, the claimant is unable to establish the elements for the affirmative defense of an innocent owner. He has not provided sufficient evidence to establish this affirmative defense, as there is no evidence to support his allegation. Accordingly, the claimant's Motion to Dismiss should be denied.

### III.  Conclusion

The government initiated judicial forfeiture proceedings within the time frame required by Department policy and provided actual notice to the claimant without unreasonable delay. The defendant cryptocurrencies are subject to forfeiture because they are the corpus of the crimes of money laundering and wire fraud, and the claimant has failed to prove he is an innocent owner. His Motion to Dismiss should be denied.

Respectfully submitted this 5th day of September, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Matthew G. Eltringham*
MATTHEW G. ELTIRNGHAM
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 5th day of September, 2025, to:

All ECF participants